UNITED STATES v. SEUFERT BROS. CO.

(Circuit Court, D. Oregon. April 29, 1898.)

Nos. 2,308 and 2,318.

1. CONDEMNATION PROCEEDINGS—INSTRUCTIONS—DAMAGES.

In a proceeding by the government to condemn lands for a boat railway along the Dalles of the Columbia river, defendant requested an instruction that when the government takes land it takes the fee simple, and the premises would never revert to defendant even if the work should be abandoned. *Held*, that this instruction was irrelevant, (1) because the character of the use did not admit of an inference that it might be abandoned, and the jury must be presumed to base its award on the demands of the complaint, which were for the fee; and (2) because, even on the theory of a possible abandonment, the fact that the fee would remain in the United States would not damage the defendant, since the land itself was of merely nominal value, and the damages sought were for interference with fishing rights.

2. SAME—PROVINCE OF JURY—ESTIMATES OF WITNESSES.

Where the estimates of witnesses as to the value of property taken differ very widely, and the jury themselves view the premises, it is proper to refuse an instruction that they cannot disregard the testimony of the witnesses, and base their verdict on mere conjectures of their own, unsupported by the evidence, as such instructions are liable to mislead the jury into supposing that they must not rely on their own opinions.

3. SAME—CONDITIONS OF CONDEMNATION—INSTRUCTIONS.

It is not proper to submit to the jury instructions to determine whether the government can comply with a condition on which its proposed condemnation of land is sought, and authorize them to award damages in advance as for a failure.

4. SAME—EXTENT OF RECOVERY.

The owner of land sought to be condemned cannot recover for the value of the land belonging to a railroad company's right of way across a portion of it.

5. SAME—INADEQUATE DAMAGES—PASSION AND PREJUDICE OF JURY.

Of seven witnesses no two agreed as to the amount of damages to the land affected, their estimates ranging from $5,000 to $175,000. The jury viewed the premises under an order of the court, and awarded $9,000. *Held*, that the damages were sufficient, and the jury was not influenced by passion or prejudice.

John H. Hall, U. S. Atty., and Julius C. Moreland, for the United States.

A. S. Bennett and Lionel R. Webster, for defendant.

BELLINGER, District Judge. This is a motion by the defendants for a new trial in a proceeding to condemn a right of way for a boat railway between Celilo and Dalles City on the Columbia river. The jury assessed defendants' damages at $9,000. The motion is based upon alleged errors of the court in failing to give instructions, requested by defendants, as follows:

"(10) Where the government of the United States takes the land, as in this case, it takes the fee simple or entire and perpetual title of the land; and the premises would never revert to the defendant, even if the work should be abandoned."

"(12) In relation to the building and improvements of a permanent and fixed character situated upon premises sought to be taken, I charge you that they are a part of the land, and go with the land, and the defendant is entitled to have the full value of the same included in your assessment of damages."

"(29) In arriving at your verdict, it is your duty to be governed by all evidence in the case, and this applies to the question of the amount of damages. You would not have a right to disregard the sworn testimony of the witnesses as to the amount of damages, and base your verdict upon some mere conjecture of your own, unsupported by the evidence."

"(2a) If any of the crossings of the defendants which the defendants now have across land occupied by the proposed right of way are of such a character that it will be impossible or impracticable to replace them with a crossing equally good, then you should allow the defendant for the loss or impairment of such crossing, notwithstanding the reservation in the pleadings in that regard."

"(32a) Whether the O. R. & N. Co. owns the right of way over part of the ground sought to be appropriated or not can make no difference, as you must allow the defendants in this case full value for the whole strip taken, whether it belongs to the defendants or to the O. R. & N. Co.; and then, if the O. R. & N. Co. has any interest, that will be a matter for settlement between it and this defendant. You cannot reduce the damages of this defendant any whatever upon the ground that part of the land may or does belong to said company, or that said company has a right of way across it."

And it is assigned as a further ground of the motion "that the jury was influenced by prejudice, and that the damages assessed are insufficient."

Instruction numbered 10 is irrelevant, for these reasons: (1) The case does not admit of an inference that the use for which condemnation is sought might be abandoned. It must be pre-

sumed that the jury's award was based upon the demands of the complaint, which are for the fee; and, moreover, the character of the use shows that it is to be perpetual.    (2) Upon the theory of a possible abandonment of the use by the United States, the fact that the fee to land condemned would continue in the latter would in no way prejudice the defendants, since the damages claimed by them are based wholly upon the interference to the fishing industry occasioned by the use to be made of the condemned property by the United States, the land as such having only a nominal value.

The substance of the above instruction numbered 12 was given to the jury.    The court instructed the jury that they should consider the present value of defendants' premises as a whole, including the uses to which they are or may be applied, including fishing rights and privileges, and the permanent improvements as they now are, and then consider what such value will be when the boat railway is completed and in operation.

The instruction requested, and not given, that it is the duty of the jury to be governed by the evidence in the case, is a matter of such universal knowledge that the jury are presumed to know it.    The further statement in the instruction requested was calculated to lead the jury to conclude that they were obliged, in the assessment of damages, to be governed by the opinions of witnesses as to the damages, and were thereby precluded from forming opinions of their own from the facts before them.    To illustrate: Witnesses gave opinions as to the value of the property condemned as a railroad right of way, placing such value as high as $100,000. The jury were not bound, in estimating defendants' damages, to include the amount at which these witnesses placed the value of the land for railroad purposes.    These estimates were mere opinions, based upon facts to which the witnesses testified, and from which the jury might form opinions of their own.    And so of the other elements of damages, such as the damages resulting from the inconvenience occasioned the defendants in handling fish by the proposed improvement.    The jurors were not required to adopt any estimate of witnesses as to these matters, but were at liberty, upon a consideration of the facts before them, to make their own estimates.    The instruction requested in effect directed the jury to find in accordance with this opinion evidence; at least it was liable to be so understood; and from the tenor of the instruction and the contention made before the jury in the argument this was the purpose of the instruction.    The court was asked to instruct the jury that they had no right to disregard the sworn testimony of the witnesses as to the amount of damages, and base their verdict upon mere conjecture of their own, unsupported by the evidence.    The understanding and purpose of this instruction was to require the jury to base their findings upon the statement of witnesses as to the amount of damages, and to advise them that they must not form opinions of their own unless supported by such opinion evidence.    The character of this testimony as mere opinion, and its value as affording a proper basis for determining the compensation to which defendants were entitled, is shown by the wide

divergence of this testimony. Of the seven witnesses who gave their opinions on this subject, no two were agreed. The first witness was of the opinion that the entire property was worth $150,000, and that the damages caused by the proposed taking were one-half this sum,—$75,000. The second witness was of the opinion that the damages should be placed at $100,000. The opinion of the third witness was that the entire property was worth $200,-000, and that the damages were one-third of this sum,—$66,666. The fourth witness was of the opinion that the rights condemned were worth, for railroad purposes alone, from $25,000 to $50,000; that, aside from this, the value of the property affected was $200,-000, and the damages, not including value of the land taken for railroad right of way uses, were from 10 to 25 per cent. of this value; making the total damages, according to the opinion of this witness, from $45,000 to $100,000. The fifth witness,—Seufert,—the principal owner, testified, in effect, that the land taken was worth, in his opinion, from $60,000 to $75,000 for a railroad right of way alone, and that the damages accruing to him otherwise would reach $100,000; making a total of from $160,000 to $175,000. One of the two witnesses testifying for the United States estimated the damages at from $12,000 to $15,000, and the other testified that, if there was no inconvenience caused by the work of construction, defendants' damages would be from $5,000 to $10,000, but that with such inconvenience it would reach from $10,000 to $15,000. These widely varying conjectures of the different witnesses and of the same witnesses cannot afford a basis for estimating the compensation to be paid defendants. The jurors were quite as competent to form opinions as the witnesses in the case. Furthermore, the statute provides that the jury "are not bound to find in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds." Comp. Laws, § 845. And so the jury, upon the facts before them, might properly disregard not only the conclusions of witnesses, but their testimony as to facts, if not satisfied of their correctness, and from other evidence before them form their own conclusions. There was a view by the jury of the premises in question, under an order of court, made in pursuance of a statute of the state. In this class of cases the view of the jury is evidence to be taken into consideration with the other evidence in the case. "The result of a jury's personal view of the land is evidence proper to be acted upon by them; and if they believe, from the whole evidence, that they have from such view arrived at a more accurate judgment as to the value of the premises sought to be taken, and of the damages, than that shown by the evidence in open court, they may, upon the evidence, rightfully fix the value of the land taken and the damages at the amount so approved by their judgment formed from the personal examination, even though it differs from the amount testified to and the weight of testimony given by witnesses in open court." Kiernan v. Railway Co., 123 Ill. 188, 14 N. E. 18; Railroad Co. v. Sawyer, 71 Ill. 361. And where there is a wide conflict

of testimony they will be justified in acting on their own judgment entirely. Railroad Co. v. Reed, 35 Cal. 621; In re Antoinette Street, 8 Phila. 461; 7 Enc. Pl. & Prac. 583, note.

Instruction numbered 2a, requested by the defendants, proposed to leave it to the jury whether the United States could comply with the condition upon which its proposed condemnation was sought, and, in effect, authorized them to award damages in advance as for a failure in that respect. The rights which the government secures by this proceeding are subject to the limitations and conditions contained in its complaint. If any of these conditions are impossible of performance, it must be assumed that the United States will not insist upon the right of way without further compensation. The good faith of the government must be presumed. Its obligations admit of no higher or other security. And, besides this, the practicability of what is proposed is shown by the testimony of the only witnesses whose experience and engineering knowledge qualify them to testify in the premises. There is nothing legitimately tending to contradict the testimony which shows that it is practicable to replace existing crossings with others "equally good." The jury were specially instructed to consider any inconvenience to result from the operation of the proposed crossings and from the increased length of tramway, made necessary by the proposed boat railway; and the general instruction, already referred to, which required the jury to consider the difference between the present value of defendants' property, rights, privileges, and improvements, including all their present and prospective uses, and their value as affected by the proposed improvement, includes every element of damage, whether it arises out of possible inconveniences from differences in the character of the crossings from those now in use or otherwise.

The instruction requested by defendants numbered 32a was properly refused. The railroad right of way of the Oregon Railway & Navigation Company is not subject to the condemnation attempted in this action, and there can be no recovery of compensation or damages on account thereof. The so-called possession of defendants is, therefore, not material, although, notwithstanding the admission of the pleadings, the facts shown by the evidence are that the railway company is in possession of its right of way and is operating its road thereon, and the alleged possession of defendants consists in their occupancy of a part of the land within the right of way by sufferance of the company. But, aside from these matters, the admitted fact being that the land sought to be condemned for a boat railway has no value, any recovery, if allowed, of its "full value," could only be for a nominal or trifling amount, of which the law will not take notice. The defendants claim nothing for any of their land to be condemned, except as the proposed use will affect their adjacent fishery. The compensation and damages claimed by defendants as to all the land taken are based wholly upon the injury that the proposed use will cause to their adjacent fishery, and upon the value of the land condemned as a railroad right of way. The instructions given were broad enough to warrant compensation for all injuries to defendants' fishing rights and interests by the proposed

boat railway, without reference to the fact that it might occupy some portions of the railroad right of way, and it does not admit of argument that defendants cannot recover for the value as a right of way of land belonging to the railroad company, and in its actual use for that purpose.

The last ground of this motion is that the jury was influenced by passion and prejudice, and that the damages are insufficient. I am of opinion that the verdict is sufficient to fully compensate defendants for the land taken and for all the injuries consequent upon the construction and operation of the proposed improvement. The damages claimed are speculative. The wide conflict in the testimony of defendants' witnesses shows upon what an unsubstantial and conjectural basis they rest. These estimates range from $45,000 to $175,000. The testimony of one witness fixed such damages at anywhere from $45,000 to $100,000, while the testimony of witnesses for the United States placed such damages as low as $5,000, not including possible inconveniences to defendants from the proposed improvement, leaving the matter of such inconvenience a matter of doubt. I am of the opinion, from all the testimony in the case, that the proposed improvement will not interfere with or injure the fishing interests and business of defendants, and that the damages awarded more than compensate for the increased expense and inconvenience likely to result from the operation of tramways and new roadways in connection with the conduct of defendants' business, and from injuries to improvements, and that there is no prospective use for additional rights of way at this point; and the claim for compensation on that account is without foundation. In reaching these conclusions I do not take into account the fact that defendants, in May, 1895, offered this right of way to the United States for $5,000, and offered to remove such of their buildings as might be required at their own expense. This offer was accompanied by the statement that defendants did not consider such sum "any compensation for the damages" that the proposed road would cause them, and that the offer was only "to get the matter settled." Making due allowance for defendants' wish to get the matter settled, it is unreasonable to suppose that they believed their damages were $150,000, or were greatly above the sum they were willing to take. Nor have I taken into account the fact that last year, and after defendants' answer claiming damages in the sum of $150,000 was filed, all of defendants' real property and improvements were assessed at $14,578, and their fish wheels were assessed at the further sum of $8,000, and that the real estate was, in the opinion of the assessor, assessed at three-fourths of its actual value. While this assessment appears to have been made by the assessor, and was upon the basis of values adopted for other similar property, yet the figures of the assessment were examined by Mr. Seufert, president of the defendant company, and he must, therefore, assume responsibility for them as a just estimate of value. One of two conclusions from this assessment, bearing upon the credit to be given to the testimony of defendants' witnesses, seems unavoidable,—either that there is a lax state of public morals in the community where real property and im-

provements, worth, according to the testimony of the owners and of all the witnesses, in the vicinity of from $150,000 to $300,000, is taxed at $22,000, or that the testimony of these witnesses as to value is unreliable and worthless; nor does it mend matters to say that all other property in the vicinity of the same character is assessed at the same rate. The motion for a new trial is overruled.