EMPIRE STATE-IDAHO MINING & DEVELOPING CO. v. BUNKER
HILL & SULLIVAN MINING & CONCENTRATING CO.

(Circuit Court of Appeals, Ninth Circuit.    March 3, 1902.)

**1. APPEAL—REVIEW—ACTION TRIED TO COURT.**

It is settled law in the federal courts that, where an action at law
is tried to the court, its findings upon questions of fact are conclusive,
and that the only matters reviewable in the appellate court are the
rulings on questions of law, when properly presented by bill of excep-
tions, and, when special findings are made, whether the facts found are
sufficient to sustain the judgment.

**2. MINING CLAIMS—VALIDITY OF LOCATION—EXTRALATERAL RIGHTS.**

Extralateral rights of a lode mining claim apply only to what is be-
neath the surface, and never operate to enlarge surface rights which,
under the statute, are limited to 300 feet in width on each side of the
center of the ledge or lode; and where the ledge or lode is of greater
width, so that the outcroppings extend beyond a side line, another claim
may be located thereon which will carry all surface rights within its
boundaries, and underground extralateral rights, subject to those of the
older claim; and where the end line planes of the two claims are not
parallel, or do not coincide, the second locator may follow the vein in
its dip between the planes of his own end lines wherever not included
between the end line planes of the senior location, as against any subse-
quent locator along the lode beyond an end line of the first claim.

In Error to the Circuit Court of the United States for the District
of Idaho.

For opinion below, see 106 Fed. 471.

W. B. Heyburn and E. M. Heyburn, for plaintiff in error.

Curtis H. Lindley and John R. McBride, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge.    This was an action of ejectment, in which
the defendant in error was plaintiff in the court below, brought for the
recovery of certain underground portions of a vein or lode alleged to
have its apex within the surface lines of a mining claim called the
"King," which vein or lode, it is alleged in the complaint, in its course
crosses the end lines of that claim.    The incidental question of dam-
ages, for which the plaintiff also sued, has been, by stipulation of the
respective parties, withdrawn from present consideration.    The case
was tried without a jury, and resulted in certain findings of fact made
by the court, and a judgment thereon in favor of the plaintiff to the
action.    The record contains a bill of exceptions embracing, among
other things, various assignments of error, the 2d, 3d, 4th, and 5th
of which are to the effect that the trial court erred in making certain
of its findings of fact, which findings of fact so complained of these
assignments of error respectively set out at large.    The 6th, 7th, 8th,
9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, and 20th
assignments of error are to the effect that the court below erred in re-
fusing to make certain findings of fact requested by the defendant to
the action.    It is very clear that these assignments are unavailing.
Where a case is tried by the court without a jury, its findings upon
questions of fact are conclusive in the appellate court.    Only rulings
upon matters of law, when properly presented in a bill of exceptions,

can be considered here, in addition to the question, when the findings are special, whether the facts found are sufficient to sustain the judgment rendered. Stanley v. Supervisors, 121 U. S. 535, 547, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Distilling & Cattle Feeding Co. v. Gottschalk Co., 13 C. C. A. 618, 66 Fed. 609; Cable Co. v. Fleischner, 14 C. C. A. 166, 66 Fed. 899; Consolidated Coal Co. of St. Louis v. Polar Wave Ice Co., 45 C. C. A. 638, 106 Fed. 798.

The remaining assignments of error embodied in the record relate to the question of the sufficiency of the findings of fact made by the court below to sustain the judgment given by it, which is the real, and, indeed, the only, question in the case. Annexed to the opinion of the court below, as illustrative of its views, is the following diagram:

It appears from the findings that the defendant to the action (the plaintiff in error here) is the owner of the Viola mining claim, located February 20, 1886, and patented April 13, 1895; the San Carlos, located April 24, 1886, and patented April 22, 1895; the Skookum, located April 5, 1886, and patented August 10, 1891; the Likely, located April 24, 1898; and the Cuba, located May 7, 1898,—neither of which last two have been patented. The King, according to the findings, was located June 22, 1898, and is owned by the defendant in error (plaintiff in the court below). The ore bodies in controversy, and which were awarded to the defendant in error by the judgment of the court below, lie beneath the surface of the Likely, Skookum, and Cuba claims. As these three claims are also, according to the findings, the property of the plaintiff in error, prima facie the ore bodies in question belong to it. Cheeseman v. Shreeve (C. C.) 37 Fed. 36;

Mining Co. v. Murray (Mont.) 23 Pac. 1022. They are also embraced by vertical planes drawn down through the end lines of the San Carlos claim, extended in their own direction, which claim has been patented by the government, and is also owned by the plaintiff in error. The court below held that the King claim, which was not located until long subsequent to all of the others mentioned, was so located as to entitle its owner to the underground bodies of ore found under the surface of the Likely, Skookum, and Cuba, and within the end line planes of the San Carlos, extended in their own direction. At the time of the location of the King claim the only unappropriated piece of surface ground in the vicinity, according to the findings, was the triangular piece lying between the Tyler claim and the Viola and San Carlos. The same vein or lode of mineral bearing rock that outcropped in the Viola, San Carlos, and Tyler outcropped in this triangle, and it was therefore open to location, subject, of course, to all preexisting rights. In making the location of the King, the entire westerly and southerly lines, and almost all of the northerly line, were laid within the patented claims of the plaintiff in error, all of which was done, according to the findings of the court below, "without the consent or knowledge of the owners of said Viola and San Carlos lode claims." And the contention of the plaintiff to the action, which was sustained below, was, and here is, that lines so laid (being otherwise also in accordance with law) confer extralateral rights upon the locator as against the owner of the patented ground so entered upon. It is the settled law that, for the purpose of acquiring the extralateral rights conferred by statute, a locator may place his lines on a prior mining location with the consent of such prior locator, or, when it is done openly and above board, without objection on his part (which in reality constitutes consent); and perhaps the same thing may be done on patented claims, where the lines are established openly and peaceably. It was so held by the secretary of the interior in the case of the Hidee Gold Mining Company (decided January 30, 1901). But it is equally well settled that no such right can be acquired by any forcible, fraudulent, or clandestine entry upon the possession or ownership of another. Cosmos Exploration Co. v. Gray Eagle Oil Co. (C. C. A.) 112 Fed. 17; Cowell v. Lammers (C. C.) 21 Fed. 202; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 680; Hosmer v. Wallace, 97 U. S. 579, 24 L. Ed. 1130; Mower v. Fletcher, 116 U. S. 385, 6 Sup. Ct. 409, 29 L. Ed. 593; Nickals v. Winn, 17 Nev. 188, 30 Pac. 435; McBrown v. Morris, 59 Cal. 72. Under which of these conditions the findings of the court below place the entry of the King locator upon the patented claims of the plaintiff in error need not be determined, for the reason hereinafter appearing.

The findings and diagram annexed to the opinion of the court below show that the vein or lode in question is a very wide one, and crosses both end lines of each of the plaintiff in error's patented claims, Viola and San Carlos, the common side line of these two claims being entirely on the vein or lode. The Viola, being the older of the two locations, would, under the doctrine of St. Louis Min. & Mill. Co. of Montana v. Montana Min. Co., 44 C. C. A. 120, 104 Fed. 664, and like decisions there cited, be entitled, in the pursuit of its extralateral

rights, to the entire width of the vein underground within its bounding planes. But extralateral rights apply only to what may be found beneath the surface within the limits fixed by the statute, and never operate to enlarge or contract surface rights. Surface rights are limited by the statute to 300 feet in width on each side of the center of the ledge or lode, yet such ledge or lode may extend beyond such side lines, and, in the case at bar, did extend southerly of the southerly side line of the Viola claim, and into unappropriated public land. The locator of the San Carlos claim, finding it outcropping there, made the San Carlos location upon it, as he had the right to do, and as the government recognized by issuing its patent in confirmation thereof. The ledge or lode crossing both of the end lines of that claim, the extralateral rights conferred by the statute thereupon arose, subject, however, to the extralateral rights of the prior Viola location, which were, as all such rights are, confined between vertical planes drawn down through its end lines, extended indefinitely in their own direction, which gives to the Viola, as against all of the claimants here appearing, the underground portion of the vein or lode on its dip between vertical planes drawn down through the lines A E and C G of the diagram, extended indefinitely in their own direction. But where the prior extralateral rights of the Viola cease, namely, at the line E B of the diagram, those of the next locator—that is to say, the locator of the San Carlos—commence, and embrace that portion of the dip of the vein or lode not included within the rights of the Viola, and embraced within vertical planes drawn down through the end lines of the San Carlos extended indefinitely in their own direction. These lines include the ore bodies in controversy. They were therefore not subject to inclusion by the extension of the end lines of the subsequent location of the King claim, even if it be conceded that its lines were so laid as to entitle its locator to extralateral rights.

The judgment is reversed, and cause remanded to the court below, with directions to enter judgment for the defendant on the findings.