BUNKER HILL & SULLIVAN MINING & CONCENTRATING CO. v. EMPIRE STATE-IDAHO MINING & DEVELOPING CO.

(Circuit Court, D. Idaho. January 17, 1903.)

**1. MINES AND MINING—LOCATIONS—AMENDMENT.**
Locations may be amended, without the loss of original rights, except those inconsistent with the amendment; but new rights cannot be added which are inconsistent with the acquired rights of others.

**2. SAME—EXTENSION OF LOCATION.**
*Held*, in accordance with the rulings of the appellate courts, that a junior locator may, for the purpose of acquiring extralateral rights, extend his surface location over prior locations when their owners do not object.

**3. SAME—MONUMENTS—CONCLUSIVENESS.**
A monument established by the locators of two different claims as the point through which the dividing line between them shall run is not binding upon subsequent purchasers, unless so made of record as to give notice to such purchasers.

**4. SAME.**
The ledge may be followed between the perpendicular planes of its end lines, regardless of the fact that this may be more upon the course than upon the dip of the ledge.

**5. SAME—MINERAL-BEARING LEDGE.**
When the mineral-bearing ledge consists of a mineralized zone or belt, without distinct walls, rather than a well-defined ledge, the practical mode of determining its legal width is by the lines beyond which ore is not found, or beyond which such indications of it do not exist, which would encourage the miner to continue his explorations with the expectation of compensation.

**6. SAME—FOLLOWING LEDGE.**
The owner of a ledge may follow it continuously and indefinitely, except where intersected or crossed by the ledge or underground rights of a prior locator, and beyond such intervening right the junior owner may resume and follow his ledge.

(Syllabus by the Court.)

See 106 Fed. 471; 108 Fed. 189; 109 Fed. 538, 48 C. C. A. 665; 121 Fed. 973, 58 C. C. A. 525; (C. C. A.) 131 Fed. 591.

Curtis H. Lindley and McBride & Folsom, for complainant.
W. B. Heyburn, for defendant.

BEATTY, District Judge. Complainant, as owner of the Stemwinder Mining Claim, in bringing this action to quiet its title to an underground portion of the ledge thereof, admitting the priority of the Emma and Last Chance mining claims, makes no claim to any part of their surface area, nor to any portion of the ledge lying between the extend-

ed planes passing through their legal end lines; but it claims that underground portion of the ledge lying between the prolonged planes of the Stemwinder end lines and westerly of the prolonged plane passing through the north end line of the Last Chance, being that space represented upon the following plat (showing approximately the relation of the premises) by the lines X T, X Y, and Y R:

The said mining claims were located on September 17, 1885, but by judicial determinations the Emma and Last Chance, owned by the Last Chance Mining Company, have priority of rights. The location of the Stemwinder was amended on May 23, 1887. The Viola, the Skookum, and the San Carlos claims, owned by defendant, were located, respectively, on February 20, April 5, and April 23, 1886. Most of the questions now submitted are involved in an appeal pending in the Circuit Court of Appeals from an order of this court in this case granting a restraining order pendente lite. It is desirable to wait the conclusion of that court; but, as it has been suggested by one of the counsel that action may be delayed until the case on its merits reaches there, it is concluded not to delay.

It has long been held that a mining location may be amended without the forfeiture of any rights acquired by the original location, except such as are inconsistent with the amendment, but new rights cannot be added which are inconsistent with those acquired by other locations made between the dates of the original and the amended location. The amended Stemwinder notice fully states the reasons therefor, and specifically reserves all prior acquired rights. While the new lines are placed almost within the old, they are so laid that in their prolongation westward they leave out on one side and take in on the other small portions of the ledge not included between the original lines. The amended location is valid against any of defendant's locations made after the date of the amended notice, May 23, 1887; but, as to those made between the dates of the original and the amended location, it is void as to any portion of the ledge claimed by the amended location which was not included in the original, in so far as it conflicts with any of defendant's locations involved in this action.

The defendant contends that the south line of the Emma, prolonged westward, should bound the extralateral rights of the Stemwinder. It was so held by this court (108 Fed. 194), which was reversed by the appellate court (109 Fed. 538, 48 C. C. A. 665). I now think that this court should have held, as it then suggested, that the north boundary line of the Stemwinder should be one drawn parallel to its south line at the place where the ledge crosses the Emma line. This would have been consistent with the "overlap" doctrine and some other rulings, and would have given the Stemwinder the same length of ledge underground that it has of the apex, which in my opinion is the undoubted contemplation of the law. But the complainant is not content with this, and demands that its extralateral rights be limited only by its end lines as laid. If it is correct, then the locator of an unclaimed apex of even 10 feet may overlap other valid locations for 1,490 feet, and thereby claim extralateral rights for the distance of 1,500 feet of all the fractional underground portions of the ledge not included in prior extralateral rights. If this is the law, it must lead to great confusion of rights. It is said that the Supreme Court has in effect so held. I am unable to so read its decisions. I think that the argument in the Del Monte Case, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72, is to the contrary, for on page 85, 171 U. S., page 907, 18 Sup. Ct., 43 L. Ed. 72, it says:

"Perhaps the rights of the junior locator below the surface are limited to the length of the vein within the surface of the territory patented to him, but it is unnecessary to now decide that matter."

So far as my attention has been directed, that court has not decided this question, at least not as to the vein upon which the discovery and location is made. The question of doubt with me is concerning the decision of the Court of Appeals in 109 Fed., 48 C. C. A., where on page 542, 109 Fed., and page 670, 48 C. C. A., it is said that:

"Across that ledge and on unappropriated public land the locator of the Stemwinder laid his southerly end line, and along the course of the ledge and on unappropriated public land he laid his westerly side line. Across the ledge, partly on unappropriated public land and partly on the prior Emma location, he laid his northerly end line, parallel with his southerly end line, and along the course of the ledge, partly on the Emma and partly on unappropriated public land, he laid his easterly side line, almost, if not quite, parallel with his westerly side line. As, in the absence of any objection on the part of the owner of the Emma, the locator of the Stemwinder had the legal right to cross the prior location, his lines, as against the government and all subsequent locators, would therefore seem to have been perfectly laid. Under such circumstances, we are unable to see why, as against the government and all subsequent locators, the location should not carry precisely the same rights, surface and extralateral, that it would carry if none of the lines had been laid upon or over a prior location, which, under the statute governing extralateral rights, would give to the locator of the Stemwinder, as against the government and all subsequent locators, the right to follow the dip of the vein in its departure from the westerly side line of the claim indefinitely between vertical planes drawn through the parallel end lines extended indefinitely in their own direction."

The court describes the same end lines claimed by complainant in this action, and says that its extralateral rights extend indefinitely between the planes of those lines. While that was in another case, with its differing facts, it yet seems to me that the doctrine announced sustains complainant's claim. If so, the plain duty of this court is to follow it. There is, however, one question of uncertainty involved in the suggestion of the appellate courts that a junior location cannot be laid over a senior, against the objection of the owner. What must be the nature of the objection or resistance seems nowhere to be clearly defined. In the Del Monte Case (page 83, 171 U. S., page 906, 18 Sup. Ct., 43 L. Ed. 72) it is said that:

"A party who is in actual possession of a valid location may maintain that possession and exclude every one from trespassing thereon, and no one is at liberty to forcibly disturb his possession or enter upon his premises."

It then refers to the fact that these lands are uninclosed, and the limits of possessory rights are vague and uncertain, and the validity of apparent locations is unsettled and doubtful, and seems to point to the conclusion that if a junior locator overlaps another claim in the absence of its owner, or from uncertainty of boundaries, or without the exercise of force, or without distinct objections from such owner, he will be protected in his extralateral rights based upon such a location. The evidence is that the owner of the Last Chance and Emma claims has in the past few years so vigorously objected to the overlapping of those claims by the Stemwinder as to remove any stakes or markings of such claims found within their limits; but complainant's rights are not controlled by recent objections. Only the acts of the parties at the time

the Stemwinder location was made are to be considered. The evidence fails to show that, when the Stemwinder was located, objections were made to marking its boundaries across the other claims. On the contrary, the objections made seem to have been those of the locators of the Stemwinder to the placing of the stakes of the other claims upon their ground.

The placing of a monument upon the south line of the Emma by the locators of the claims as the line of separation between them is also urged as an additional reason why that line should limit complainant's rights. There is no doubt that those locators did agree upon this monument and erected it, and, if this were an action between them, it would be an important factor in determining their rights; but the question is whether their acts bind subsequent purchasers. They only fixed the monument. They did not establish a line. They did not re-mark their boundaries. They did not make of record the evidence of what they did, which seems to have been only an oral contract and the building of the monument. It may be suggested that, if such a contract can be enforced now, it must be between the owners of these several claims. The defendant has no interest in either. It is therefore now held that complainant is not bound by such monument, that it may base its rights upon the original marking of the Stemwinder and such of those rights as are reserved by the amended location, and that its extralateral rights in this case are, as I understand, defined by the Circuit Court of Appeals in the case above referred to.

Whether the evidence sustains defendant's contention that complainant, in following the ledge between the planes of its end lines, does so more upon its strike than upon its dip, I have not determined. There is nothing in the mining act that can possibly justify the conclusion that this extralateral right must be limited to 45 degrees, or to any other particular variation, from the true dip. All that this court can do is to follow the rule, as it understands it, adopted by the Supreme Court. That court holds without any qualification that the extralateral right is bounded by the prolonged planes of the legal end lines. I do not desire to add to what I have said in other cases in justification of my adoption of this rule.

The defendant also maintains that the apex of this ledge is so wide that it extends far to the westward of the west line of the Stemwinder. Upon this subject there is much, and some very interesting, testimony by experienced and scientific mining men; but no one has been able to set definite limits to the ledge, and that it has no distinct hanging wall cannot be doubted. Its one distinct and persistent feature is its foot wall. It was the axis of action. Upon it the superincumbent mass of hanging country had its oscillating and grinding motion, resulting in the creation of that heavy selvage or gouge now found upon it, and in so shaking and breaking up that hanging country as to change the relation of its component parts, thus creating large masses of brecciated rock, fissures, and cavities, through which the circulating mineral elements deposited their ores. It would be expected

that those conditions would decrease as we advance from the line of fissure and action, until reaching a point where there had been no disturbance of the rocks. We would expect the evidence of mineralization to extend far beyond the ore deposits, and as far as the country had been disturbed, displaced, or brecciated; but we cannot conclude that the legal hanging wall extends to the limits of these influences. It is a fact that, in many ledges having a distinct hanging and foot wall, the country beyond either is more or less mineralized, and at times even small deposits of ore are found beyond the lines of the walls. Yet no miner would say that such mineralized country rock constitutes a part of the ledge. It appears that in this ledge the foot-wall country has very little mineralization, or even mineral stains. The reason is evident. The heavy gouge prevented the escape in that direction of the mineral elements, and, the rocks having preserved their original compact formation, there were no cavities through which the mineral elements could circulate. To hold that the ledge extends to the extreme limits of all evidence of mineralization is not a reasonable or practical proposition in such a formation as this. If not there, where, then? Not beyond the ore deposit line, or where such strong indications of it are found that the miner would work or explore with the expectation of compensation. It cannot be doubted from the evidence that far beyond the line where any miner, acquainted with this formation, would work for ore, there is much evidence of mineralized rock, quite similar to the material recognized as clearly within the ledge. So far as can thus be concluded from all the evidence of ore developments at and within a reasonable distance below the surface in the Stemwinder, I doubt that the apex proper in that claim exceeds 250 to 300 feet in width. Suppose, however, that it does extend beyond the west line of the claim, the only effect would be, under the holding of the Court of Appeals in the King Case, 114 Fed. 417, 52 C. C. A. 219, that, if defendant owns that surface, it would own so much of the apex as lies within it. What its underground rights would be is a problem I am not called upon to now solve.

The position by defendant that the extralateral rights of the Stemwinder cannot be resumed beyond that of the Last Chance cannot be conceded. The law now works a great hardship upon the junior locator in permitting a senior to hold all the underground conflict between their extralateral rights, even when the older claims may be so irregularly located as to follow the ledge downward upon an oblique angle to its dip, and the junior so regularly located as to go down upon the true dip. Certainly this additional burden will not be added to a junior title without some explicit warrant in the law for it. I know of none. If we must have these interlacing extralateral rights, I know of no better or more equitable rule than that each owner of a ledge shall pursue it underground indefinitely and continuously, except such portion thereof as shall be crossed by the ledge of a prior claimant.

My conclusions upon most all of the vital questions in this case are reached by intending to follow the adjudications of the ap-

pellate courts, and while they are sufficiently evident from the foregoing, yet, to the elimination of doubt, it is now repeated that complainant is entitled to a decree quieting its claim and title to so much of the apex of the ledge as lies within the surface of its Stemwinder claim, not in conflict with the Emma and Last Chance claims, and to its underground and extralateral rights of that portion of the ledge lying between the perpendicular planes, prolonged westerly, passing through its end lines as now claimed by it, and westerly of the perpendicular plane, prolonged westerly, passing through the north line of the Last Chance mining claim; but there is excepted therefrom such portion of the extralateral right of any claim owned by defendant and involved in this litigation, located prior to May 23, 1887, as lies between the extended planes of the original and relocated Stemwinder lines, and that the restraining order be made permanent.

A decree in pursuance of the foregoing may embrace, not only the above specific order, but all issues involved which come within the views above expressed. Either party has 30 days from notice hereof to take such further proceedings as may be desired.