SAN FERNANDO COPPER MINING & REDUCTION CO. v. HUMPHREY.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1904.)

No. 955.

1. APPEAL—FINDING OF FACT—ASSIGNMENT OF ERROR.

An assignment that the court erred in making a particular finding of fact is not reviewable on appeal if there is any evidence on which to base the finding.

2. SAME—EVIDENCE.

In an action to recover money alleged to have been paid as attorney's fees and court expenses in the prosecution of suits alleged to have been rendered necessary by defendant's fraudulent acts, a statement of a witness that a certain sum of money, at the time of taking the testimony, had been paid out by plaintiff for attorney's fees and costs of court in the effort to regain possession of certain properties which defendant, in violation of an alleged trust, had conveyed away, was insufficient to justify a recovery of the amount so paid as damages.

In Error to the Circuit Court of the United States for the Southern District of California.

See 111 Fed. 772.

The plaintiff in error, a corporation organized under the laws of Wyoming, brought an action for damages against the defendant in error, and in its complaint alleged that prior to November 8, 1894, the defendant in error was an incorporator of a corporation known as the San Fernando Mining Company; that on that date said corporation sold to the San Fernando Copper Mining & Smelting Company, a corporation of the state of Colorado, hereinafter designated as the "Smelting Company," all of its interests in the San Fernando copper mines, situate in Lower California, republic of Mexico, and that on said date the defendant in error became also an incorporator of said last-named company; that the objects and purposes of said smelting company were to acquire by purchase all the property of the San Fernando mine, as well as to carry on a general mining business in Lower California, and to acquire mining properties therein, and that in pursuance thereof the defendant in error was employed to act as its manager in Lower California; that on June 18, 1895, the smelting company appointed the defendant in error its

attorney in fact to procure patents for mines and mining claims in Lower California, either in his own name or the name of the company; that thereupon said defendant in error did, on May 27, 1895, acquire an undivided one-half interest in the "San Fernando," consisting of five claims theretofore owned by David Goldbaum, the other half thereof being owned by one Dr. O'Cleary; that such title was acquired by a deed to the defendant in error, and that the consideration therefor was $3,000, paid by the said corporation to the said Goldbaum through the defendant in error; that at the same time and subsequently the defendant in error acquired for the use and benefit of the said corporation divers other mining claims in Lower California, known as the "San Fernando No. 1," the "San Fernando No. 2," the "Calumet Rosario," the "Hecla Rosario," and the "Iron Mine"; that on April 26, 1897, the defendant in error acquired by patent from the Mexican government the title to the Calumet Rosario and the Hecla Rosario in his own name, and that in the year 1897 he acquired title to San Fernando No. 2—all of which titles were acquired in the name of the defendant in error for the use and benefit, and as the general agent, manager, and trustee, of the corporation; that all the money required for the patenting, surveying, locating, and acquiring of said properties was advanced by the corporation, and that the corporation expended therein more than $15,000; that the defendant in error, in fraud of the rights of the corporation, on September 5, 1898, sold and transferred the Calumet Rosario and the Hecla Rosario to Eulogio Romero, and caused the title of the iron mine of San Fernando to be conveyed to said Romero; that on January 24, 1899, the defendant in error conveyed the San Fernando No. 1, and thereafter conveyed the San Fernando No. 2, to E. Romero; that the said defendant in error, in furtherance of the said fraud, and in order to cheat and defraud the said corporation of the title to the said mining properties, induced the said E. Romero to convey the same to Thomas E. Brophy on or about April 28, 1899, and the said defendant, in consideration of $1, conveyed to Thomas E. Brophy the one-half of the San Fernando mine so obtained from David Goldbaum; that demand has been made upon the defendant in error to execute his said trust by the execution and delivery of a deed for said mines to the said corporation, but the said defendant in error has neglected and refused to execute the same; that all of said acts of the defendant in error were done without the knowledge or consent of the said corporation, and in fraud of its rights; that on March 15, 1901 (which was 10 days before the commencement of the action), for value received, the said smelting company sold and conveyed unto the plaintiff in error all its real and personal estate, with all its right and property of whatsoever nature or description, together with all of its right to recover money or personal property, and all of its right of action arising out of the violation of any right of property or of any obligation. The complaint proceeds to aver that the plaintiff in error is obliged to institute proceedings in Lower California, Mexico, for the clearing of the title to its property, and has been compelled to institute proceedings to recover the possession thereof, and has been compelled to expend a large sum of money for attorney's fees and court expenses, to wit, the sum of $10,000, in pursuit and to recover possession and control of the said properties, and that by reason of the fraudulent acts and conduct of the said defendant in error as aforesaid the plaintiff in error has been damaged in the sum of $20,000. The defendant in error, answering, denied the allegations of the complaint, and set up a counterclaim thereto, and further pleaded in defense thereof that at all of the times mentioned in the complaint the laws of the republic of Mexico required that a corporation organized without that republic, as said smelting company was organized, before it could take or hold any interest in real or personal property, beneficial or otherwise, or any interest or any trust in real or personal property, or transact any other business in said republic of Mexico, must procure copies of its articles of incorporation, certificate of incorporation, and by-laws of said corporation, viséd by the authorities of the said government where it was incorporated, and viséd by the Mexican consul or other accredited agent of said republic resident in the United States, and by the secretary of foreign relations of the republic of Mexico, and file and record the same in the territory of the republic of Mexico, and pay a tax to the republic for viséing

said papers and recording the same and for permission to do business in said republic, and that until such requirements of the law shall have been complied with such corporations cannot take or hold any interest in any real or personal property, beneficial or otherwise, or any interest in any property, or prosecute any business in the republic of Mexico; that said smelting company never did comply with any of the said laws, never acquired any right to hold property in said territory, but intended at all times to evade said laws of said republic. The case was by written stipulation tried before the court without a jury. The court heard testimony concerning all the matters in issue, and made special findings of fact thereon. Among other findings, it was found specially that the plaintiff in error was never compelled to institute proceedings in Lower California for the clearing of the titles to said property, and has not, by reason of the fraud or fraudulent acts or conduct of the defendant in error, been compelled to institute proceedings for the recovery of the possession thereof; that the plaintiff in error has not been compelled to expend a large sum of money for attorney's fees or court expenses, or any sum, in pursuit or to recover possession or control of the said property, and that the plaintiff in error has not, by reason of the fraudulent acts or conduct of the defendant in error, as alleged in the complaint, been damaged in the sum of $20,000, or any other sum. Judgment upon the findings of fact and conclusions of law was rendered for the defendant in error.

Withington & Carter, George Fuller, Henry J. O'Brien, and George A. Corbin, for plaintiff in error.

Oscar A. Trippet, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The action was brought to recover money which the plaintiff in error alleged that it was compelled to disburse in prosecuting proceedings to recover the possession of mining properties situate in the republic of Mexico, to which the defendant in error had held the legal title in trust for the plaintiff in error, and which, in violation of said trust, he had conveyed to another. The complaint alleges that in the prosecution of such proceedings the plaintiff in error has been compelled to expend in attorney's fees and costs of court, the sum of $10,000. It alleges further, it is true, that the plaintiff in error has, by the fraudulent acts and conduct of the defendant in error, "been damaged in the sum of $20,000," but there is no averment of facts in the complaint showing that damages have been sustained further or otherwise than in the prosecution of the said proceedings to recover possession. There is no allegation that the plaintiff in error has lost any property through the acts of the defendant in error, and no information is afforded by the complaint either of the value of its properties, or of the result of the actions alleged to have been prosecuted for the recovery of the same. The Circuit Court has distinctly found that no moneys were paid out by the plaintiff in error for the prosecution of the alleged actions in the republic of Mexico. This finding under sections 649 and 700 of the Revised Statutes stands as the special verdict of a jury. No error is assigned to the admission or exclusion of evidence bearing upon that issue in the case. It is assigned that the court erred in making the finding, but such a finding is not subject to revision by this court if there were any evidence upon which it could be made. Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457; St. Louis v.

Rutz, 138 U. S. 241, 11 Sup. Ct. 337, 34 L. Ed. 941; Runkle v. Burnham, 153 U. S. 225, 14 Sup. Ct. 837, 38 L. Ed. 694; McIntosh v. Price, 121 Fed. 716, 58 C. C. A. 136; Empire State M. & D. Co. v. Bunker Hill & Sullivan M. & C. Co., 114 Fed. 417, 52 C. C. A. 219. The question so submitted to the court was one of fact to be decided on the evidence. It is not our province to review the evidence further than may be necessary to discover that the case is not one wherein there was no evidence to justify the finding. We find from the bill of exceptions that Henry E. Wood, the secretary of the smelting company, and one of the trustees of the plaintiff in error, testified that the latter corporation had paid over $6,000 to various attorneys "in order to recover possession of one-half of the San Fernando mine, San Fernando No. 1, San Fernando No. 2, San Fernando iron mine, and Hecla Rosario and Calumet Rosario." This is all the evidence in regard to the payment of such expenses. There is nothing in the evidence contained in the bill of exceptions to show the date at which the money was expended—whether during the 10 days that intervened between the conveyance from the smelting company to the plaintiff in error and the commencement of the present action or afterward, but it would seem to be indicated from some of the evidence offered that, if expended, it was expended afterward. Neither is there anything in the evidence to show the nature of those proceedings, in which of them or in what manner the money was expended, or whether the proceedings were properly instituted or were successfully conducted. The trial court found specially, and correctly, we think, upon the evidence in the case, that the defendant in error had never held the Hecla Rosario and the Calumet Rosario in trust for the plaintiff in error or its grantor. Money paid out in the effort to recover the possession of those claims could not, in any event, become the basis of a charge against the defendant in error. The evidence does not inform us how much of the $6,000 so said to have been expended in attorney's fees and costs of court was expended to recover the possession of those two mines. The evidence of damages must in every case be clear and explicit, and must be such as to demonstrate with reasonable certainty that injury has been sustained by the plaintiff in the action by reason of the acts complained of. We cannot see that the court erred, in view of the evidence presented in the bill of exceptions, in finding that no money had, in consequence of the fraudulent acts or conduct of the defendant in error or otherwise, been expended by the plaintiff in error for attorney's fees or court expenses in proceedings to recover the possession of the properties which it owned. From the bare statement of a witness that a certain sum of money had, at the time of taking the testimony, been paid out by the plaintiff in error for attorney's fees and costs of court, in the effort to regain the possession of properties which the defendant in error, in violation of his trust, had conveyed away, it does not necessarily follow that the sum so paid is recoverable as damages. The finding that the plaintiff in error sustained no damages is conclusive of the whole right of action, and relieves us from the necessity of considering the numerous assignments of error as to other issues in the case.

The judgment will be affirmed.