## WALL et al. v. UNITED STATES MINING CO.

(Circuit Court, D. Utah. September 4, 1905.)

No. (541) 1105.

1. MINES AND MINERALS ⊂⊃30—"VEIN"—WHAT CONSTITUTES.

A limestone belt, through which a mineral streak containing ore bodies can be traced, is a "vein," within the apex rule.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 73, 74; Dec. Dig. ⊂⊃30.

For other definitions, see Words and Phrases, First and Second Series, Vein.]

2. MINES AND MINERALS ⊂⊃30—APEX RULE—VEINS.

Where a fissure changing the formation of the land crosses a mineral vein, the owner of a claim in which the vein apexes cannot pursue it beyond the fissure.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 73, 74; Dec. Dig. ⊂⊃30.]

3. TRIAL ⊜375—VIEW—EVIDENCE.

In an action tried to the court, facts ascertained by view of the locus in quo may be considered as evidence; but, where the matter is one for experts, the court will not consider impressions obtained on view, as against their opinions.

[Ed. Note.—For other cases, see Trial, Dec. Dig. ⊜375.]

4. MINES AND MINERALS ⊜38(18)—APEX RULE—EVIDENCE—CLAIMS.

In an action to recover for a trespass on an ore body lying beneath the surface of plaintiff's mining claim, evidence *held* to warrant a finding that defendant was entitled to the mineral under the apex rule; the apex of the vein being on its property.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 104; Dec. Dig. ⊜38(18).]

5. MINES AND MINERALS ⊜30—MINING CLAIMS—TRESPASS.

Where defendant, either as owner of one claim or as owner of another, was entitled to the entire vein, the apex of which was within its properties, it is immaterial in what way it traces its title to the ore on which other mine owners claimed it trespassed.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 73, 74; Dec. Dig. ⊜30.]

At Law. Action by Enos A. Wall and another against the United States Mining Company. Judgment for defendant.

MARSHALL, District Judge. The plaintiff Wall, as lessee, and the plaintiff Fox, as the owner of the fee, of the Red Rover mining claim, instituted this action against the defendant to recover for a trespass on the ore body lying beneath the surface of said mining claim. The defendant justified its entry on the ground that the ore body in dispute is in a vein apexing in the Roman Empire, the Montana, and the Columbia Mining claims, owned by it, and that this vein, on its dip, passes beneath the surface of the plaintiff's claim and between parallel planes drawn through the end lines of the defendant's claims continued in their own direction. The case was tried by the court without a jury. The surface relations of these claims to each other is shown by a map, Exhibit 8, introduced in evidence by the plaintiffs. There is no controversy over the title to the surface. The plaintiffs own the Red Rover mining claim, and the vein in question does not apex in that claim. The defendant owns the Roman Empire, Montana, and Columbia Mining claims. These claims conflict with each other, and with respect to the conflicting areas the title is held under the senior claim. In order of seniority the Roman Empire is first and the Montana second. There is admittedly in the Roman Empire claim a zone or belt of limestone striking approximately east and west and dipping to the north. The apex of this limestone belt crosses the east end line of that claim and proceeds to the west approximately parallel to the side lines. This lime zone is of considerable width, and on its strike can be traced for a great distance. It lies between a hanging and a foot wall of quartzite, and the ore bodies in dispute are in it.

[1] It is not necessary to consider in detail the evidence which proves that this zone of limestone constitutes a vein, because in the case of United States Mining Co. v. Lawson, 134 Fed. 769, 67 C. C. A. 587, the Circuit Court of Appeals had occasion to consider the

same stratum of limestone in the light of evidence which, while it related to a portion of the zone at some distance from the claims here in question, was substantially the same as the evidence in this case. That court held that this limestone zone constituted a broad vein or lode, and that the overlying and underlying beds of quartzite were the limits of the lode. Here this vein can be followed on its dip through a network of openings from its apex in the Roman Empire to the ore bodies beneath the surface of the Red Rover, showing a demonstrated continuity of vein.

[2-4] But the real contention of the plaintiffs is that about 150 feet east of the west end line of the Roman Empire that claim is crossed by the Giant Chief fissure. This fissure is narrow, but of considerable length. It strikes approximately north and south and dips to the west. It is claimed by the plaintiffs that this fissure has faulted the formation, and that the country to the west of it has been thrown to the south. So that, while the mineralized lime belt apexes in the Roman Empire to the east of the fissure, yet the westerly continuation of the vein is found entirely to the south of all of the defendant's claims. If this be true, the western limit of the defendant's extralateral rights must be a plane drawn through the western point of the apex, as found in the Roman Empire, and parallel to the end lines of that claim. This would exclude the ore bodies in dispute, and the plaintiffs would then be entitled to recover.

The defendant admits the existence of the fissure and that at certain levels it faults the vein, the portion to the west being thrown to the south, but contends that, as the surface is approached, this throw decreases until at the surface within the Roman Empire it is either nonexistent or so small as to leave the western continuation of the vein within the limits of the defendant's claims. Whatever the fact may be as to the throw, the dip of the fissure to the west causes it to pass to the west of the ore bodies in dispute; so that these bodies lie in the same segment of the vein which undeniably apexes in the Roman Empire, but they extend west of the defendant's extralateral rights on the vein, if the apex ends in the claims of the defendant where the fissure is encountered on the surface.

The issue narrows itself to the question of the existence of the lime zone to the west of the fissure and within the defendant's claims. The problem is not easy of solution. The formation is covered with wash in which some trenches and cuts have been made. The deeper workings consist of the Corner tunnel and the R–18 tunnel. The witnesses of the respective parties do not agree as to the formation exposed. The plaintiffs' experts contend that the Corner tunnel is entirely in quartzite and that the first 135 feet of the R–18 tunnel is also in quartzite. The defendant's experts testify that both are in altered lime. The same confusion exists as to most of the cuts. The former see wash where the latter see the vein lime, and the latter find quartzite boulders in wash where the former allege that the solid quartzite formation has been reached. The appearances are ambiguous. The lime belt has been much altered, in many places to such an extent as to show an entire replacement of the lime with silica. This replacement was due to the very processes that transformed the barren lime into

a mineral vein. Where this replacement is atom by atom, the structure of the lime is apt to be reproduced in the replacing material, so that the silica, instead of being crystalline, is amorphous. No chemical test will discriminate between quartzite and lime entirely replaced with silica; but admittedly, if a thin slide is made of the rock, and it be examined under the microscope with polarized light, the question is easy of solution. The crystals of quartzite diffracting the light reveal the colors of the solar spectrum, while the amorphous quartz displays no such colors.

This was the test applied by the defendant's experts, and the result enabled them to pronounce the formation disclosed in the Corner and R–18 tunnels to be altered lime. They admitted that samples taken from both tunnels so resembled quartzite as to be difficult or impossible to classify without a microscopic test. If this evidence for the defendant is truthful, it demonstrates the existence of the lime belt to the west of the Giant Chief fissure and within the defendant's claims. If it be false the samples of rock from which the slides were made were selected with a fraudulent purpose to deceive, and either not obtained from the tunnels in question, or, if from them, taken from some small crack or fissure in the quartzite, in which there had been a secondary infiltration of lime. An honest mistake seems impossible. The slides were prepared by Dr. Talmage from samples taken by him, and were prepared, as he testified, for his own information, and not for use in court.

I am aware that some experts color their opinions to suit their interests, too readily assuming that they are justified in advancing specious arguments to support their employer's side of the case; but it has not been my experience that they deliberately misstate facts, as distinguished from opinions, with greater frequency than other witnesses.

At the request of the parties, I personally examined the ground, and I am asked by the plaintiffs to accept my own impressions of the nature of the rock as against this evidence. Two opposing theories are held as to such views of premises by court or jury. According to the first theory, such a view is not for the purpose of obtaining evidence, but only for the better understanding of the evidence given. The facts ascertained by the view are not regarded as a part of the proof. Close v. Samm, 27 Iowa, 503; Jeffersonville, etc., R. Co. v. Bowen, 40 Ind. 545; Heady v. Turnpike Co., 52 Ind. 117; L. & N., etc., R. Co. v. Wood, 113 Ind. 544, 14 N. E. 572, 16 N. E. 197; Sasse v. State, 68 Wis. 530, 32 N. W. 849. But by the weight of authority the facts ascertained by a view are to be considered as in evidence and given due weight in reaching a conclusion. Indeed, any other rule is incapable of practical application. Washburn v. Railroad Co., 59 Wis. 364, 368, 18 N. W. 328; Denver T. & F. Co. v. Ditch Co., 11 Colo. App. 41, 52 Pac. 224; Tully v. Railroad Co., 134 Mass. 499; People v. Milner, 122 Cal. 171, 54 Pac. 833; McGar v. Bristol, 71 Conn. 652, 42 Atl. 1000; Maywood Co. v. Maywood, 140 Ill. 216, 29 N. E. 704; Chicago, etc., R. Co. v. Parsons, 51 Kan. 408, 32 Pac. 1083; Shepherd v. Camden, 82 Me. 535, 20 Atl. 91; Seattle, etc., R. Co. v. Roeder, 30 Wash. 244, 70 Pac. 498, 94 Am. St. Rep. 864; Fox v.

B. & O. R. Co., 34 W. Va. 466, 12 S. E. 757; U. S. v. Seufert Bros. Co. (C. C.) 87 Fed. 35.

But, while I agree that I am to consider my own impressions obtained from a view of the premises, the question still remains as to the weight to be attached to such impressions. The appearances on the ground were confessedly ambiguous. The question was one on which experts had differed. It was admitted by both sides that a microscopic examination of the rock was the only absolutely reliable test. Defendant's witnesses had in advance conceded that even an experienced miner might be deceived on an ordinary inspection. Under these circumstances, and concerning a matter involving special knowledge and experience, it would be a great presumption on my part to attach material weight to impressions gained by my own inspection. It is unnecessary, therefore, to state the result of that inspection. The weight of the evidence is, I think, with the defendant on this issue.

[5] It is not necessary to consider whether the defendant takes the entire vein in dispute by virtue of its ownership of the Roman Empire and Montana claims, in accordance with the decisions of the Circuit Court of Appeals of the Ninth Circuit in Empire State-Idaho Mining & Development Co. v. Bunker Hill & Sullivan Mining & Concentrating Co., 121 Fed. 973, 58 C. C. A. 311, and Empire State v. Bunker Hill, etc., 131 Fed. 591, 66 C. C. A. 99, or whether as to a part it must rely on the apex in the Columbia, under the Viola-San Carlos Case, Empire State, etc., v. Bunker Hill & Sullivan, etc., Co., 114 Fed. 417, 52 C. C. A. 219. There is no reason to doubt the correctness of this latter decision.

In either event the judgment must be for the defendant.