PACIFIC POSTAL TELEGRAPH CABLE CO. v. FLEISCHNER et al.

(Circuit Court of Appeals, Ninth Circuit. January 21, 1895.)

No. 121.

1. APPEAL—REVIEWABLE QUESTIONS—WAIVER OF JURY—FINDINGS OF FACT.
Where a jury has been waived in accordance with Rev. St. § 649, the question whether the court's findings of facts are supported by the evidence is not reviewable on error, for that section declares that such findings "shall have the same effect as the verdict of a jury."

2. ATTACHMENT—AMENDMENT OF SHERIFF'S RETURN.
A sheriff's return upon a writ of attachment of personal property may be amended, by leave of court, by attaching an inventory of the property seized, where such inventory was omitted from the original return, and there is no showing of intervening rights which will be prejudiced thereby. 55 Fed. 738, affirmed.

3. TELEGRAPH COMPANIES—DELAYING MESSAGE—SUIT FOR DAMAGES.
A party damaged by the delay of a telegraph company in transmitting a dispatch ordering the levy of an attachment is not bound, before instituting a suit against the company, to test by suit the validity of prior attachments obtained by other creditors in consequence of the delay.

4. SAME—EVIDENCE OF DAMAGE—PROOF OF INSOLVENCY.
In proving the damages sustained by a creditor by the delay of a telegraph company in sending a dispatch ordering proceedings against the debtor's goods, the insolvency of the debtor may be shown by parol evidence of information gained by inquiries made of the debtor himself.

5. SAME—EVIDENCE OF CUSTOM.
Where a telegraph company received and agreed to immediately transmit an important telegram, knowing that its wires were down at the time, and not informing the sender thereof, *held* that, in a suit to recover damages, it was competent for the plaintiff to give evidence that, prior to that time, defendant, under similar circumstances, had caused messages to be transmitted by a rival company, which it did not attempt to do in this case. 55 Fed. 738, affirmed.

6. SAME—LIABILITY FOR DELAY—STIPULATIONS AGAINST NEGLIGENCE, ETC.
A telegraph company cannot be allowed, by stipulations on its message blanks against liability for delays in transmitting unrepeated messages arising from the negligence of its servants, or from unavoidable interruptions in the working of its lines, to relieve itself from liability in a case where it receives a message with full information of its great importance and the necessity for immediate transmission, knowing at the time that its lines were then down, but neither informing the sender thereof, so as to give him an opportunity to send by another line, nor itself attempting to transmit the dispatch by such other line. 55 Fed. 738, affirmed.

7. SAME—LIMITING RECOVERY—FRAUD.
Under such circumstances, the conduct of the company operates as a fraud upon the sender; and it cannot therefore be allowed by any stipulations in its blanks to reduce the right of recovery to the price of transmission, but it is liable for the full damages occasioned. 55 Fed. 738, affirmed.

8. SAME—INTEREST ON DAMAGES.
Damages for delay in transmitting a telegram having been allowed to the full amount prayed for, *held*, that it was error to allow interest thereon from the commencement of the suit.

9. APPEAL—REVERSAL—ERROR CORRECTIBLE BY COMPUTATION.
Where the only error is in allowing interest, the amount of which may be ascertained by computation, the judgment will not be reversed in toto, and a new trial ordered, but the court below will be directed to enter a judgment, such as should have been entered in the first place.

In Error to the Circuit Court of the United States for the District of Oregon.

This was an action by L. Fleischner, Sam Simon, M. A. Mayer, and Sol Hirsch, partners under the firm name of Fleischner, Mayer & Co., against the Pacific Postal Telegraph Cable Company, to recover damages occasioned by delay in transmitting a telegraphic message. A jury was waived in the circuit court, and the facts found by the court, and judgment rendered for plaintiffs. 55 Fed. 738. Defendant brings error.

Frederick V. Holman (W. S. Wood, of counsel), for plaintiff in error.

Cox, Teal & Minor and Dolph, Bellinger, Mallory & Simon, for defendants in error.

Before McKENNA, Circuit Judge, and KNOWLES and HAWLEY, District Judges.

KNOWLES, District Judge. This is an action to recover damages accruing to defendants in error by reason of the neglect of plaintiff in error to send a telegram to certain attorneys in Seattle, state of Washington, in regard to instituting suit against H. & B. Grunbaum for the sum of $3,866.21. The telegram was delivered to plaintiff in error at Portland, Or. The cause was tried in the United States circuit court for the district of Oregon. A jury was duly waived, and the facts found by the court, and judgment entered for defendants in error.

The following are the findings of facts upon which the judgment was based:

First. That the plaintiffs are partners in business under the firm name of Fleischner & Co., and are citizens of the state of Oregon; and defendant is a corporation duly organized under the laws of the state of New York.

Second. That on June 24, 1891, the firm of H. & B. Grunbaum, of Seattle, Wash., were indebted to the plaintiffs herein to the amount of $3,704.37; and on that day said firm duly confessed judgment in favor of H. & B. Grunbaum in the superior court of the county of King, state of Washington, for the sum of $16,844.81, on which judgment execution was immediately issued, and the property of said firm duly levied on by the sheriff of King county, Wash., under such execution.

Third. That at 9:15 o'clock a. m. of June 25, 1891, plaintiffs herein duly delivered to the defendant, at its office in the city of Portland, Or., for immediate transmission and delivery, the following message:

"Rush.

"To Preston, Carr & Preston, Seattle: H. & B. Grunbaum owe Fleischner, Mayer & Co. thirty-eight hundred sixty-six dollars twenty-one cents. Reported closed by sheriff. Protect claim, and report at once.

"Cox, Teal & Minor."

—Paying the regular tariff for transmission thereof, and, at the time of delivering the same, notified the defendant of the importance of said message, and requested that it be sent immediately, which the defendant, receiving the same, promised to do.

Fourth. That said message was delivered by plaintiffs to the defendant written upon one of the defendant's blanks, with the contents of which the plaintiffs were familiar, on the top of which were printed the following words:

"Pacific Postal Telegraph Cable Company.

"All messages taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a message shall order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed be-

tween the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery or for nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same, nor for mistakes or delays in the transmission or delivery or for nondelivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured, nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability to forward any message over the lines of any other company when necessary to reach its destination. Correctness in the transmission of messages to any point on the lines of this company can be insured by contract in writing, stating agreed amount of risk, and payment of premium thereon, at the following rates, in addition to the usual charges for repeated messages, viz.: One per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance. No employé of this company is authorized to vary the foregoing. No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices, and, if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender. Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance special charges will be made, to cover the cost of such delivery. The company will not be liable for damage in any case where the claim is not presented in writing within six days after sending the message. John W. Mackay, President.

"W. C. Van Horne, Vice President.

"Send the following message subject to the above terms, which are hereby agreed to."

But the defendant was fully apprised by the language of the message itself of the amount of the plaintiffs' claim, the danger of its loss, and the necessity of its prompt protection; and these facts were further emphasized by the verbal statements made by the plaintiffs at the time the message was delivered by the plaintiffs for transmission. The plaintiffs further stipulated, before they left the message with the defendant for transmission, and before they paid for its transmission, that it should be forwarded at once; and this stipulation was assented to by the defendant at the time, and became a part of the contract to transmit and deliver the message.

Fifth. That, at the time said message was so delivered to said defendant for transmission, defendant's wires between Portland, Or., and Seattle, Wash., were down, and had been down since 8 o'clock a. m. of said day; and said defendant was unable to transmit said message over its wires when so delivered to it, which fact was known to said defendant at said time, but not communicated to plaintiffs; but that the cause of such interruption was not known to it at said time, and was not caused by any negligence on their part.

Sixth. That said wires were repaired, and communication between Portland and Seattle restored, soon after twelve o'clock noon, and said message was transmitted to Seattle. The transmission thereof was commenced at or about 11:40 o'clock a. m. of said day, but for some unknown causes the transmission was interrupted, and the said message was not received at the office of the defendant in Seattle, Wash., until 12:30 o'clock p. m. of June 25, 1891, and was received by Preston, Carr & Preston, to whom it was addressed, at 12:45 o'clock p. m. of said day; and action was at once brought by said Preston, Carr & Preston, in the superior court of the county of King, state of Washington, on behalf of the plaintiffs herein, against said firm of H. & B. Grunbaum, for the amount stated in said message, and all the property of said firm was duly attached by the sheriff of said King county, Wash., under an attachment issued in said action.

Seventh. That the plaintiffs' message, if sent either by the Western Union or by the defendant at 9:15 o'clock, or within a reasonable time thereafter, in the usual course of business, would have reached the attorneys at Seattle before 10 o'clock; and, if it had reached them then or at any time before 11 o'clock a. m., a suit would have been brought upon plaintiffs' claim, and plaintiffs would have been paid in full.

Eighth. That between the time when such message should have been transmitted and delivered by said defendant, if its line between Portland and Seattle had been open, and the time it was actually transmitted and delivered, actions had been commenced against said firm of H. & B. Grunbaum, and all their property attached for amounts greatly in excess of its value; and that upon a sale thereof, made by said sheriff under execution issued in said actions, said plaintiffs were unable to realize any portion of their said claim against said firm; but that, if said message had been promptly transmitted and delivered by said defendant, the claim of said plaintiffs would have been secured, and the amount thereof realized in full from the sale of said property.

Ninth. That, at 10 o'clock a. m. of said June 25th, a message was placed in the San Francisco office of the Western Union Telegraph Company for transmission and delivery, addressed to said Preston, Carr & Preston, at Seattle, directing them to attach the property of said H. & B. Grunbaum upon claims amounting to $36,000, and that said message, after being repeated at Portland in transit, was received by said Preston, Carr & Preston, at Seattle, at 11 o'clock in the morning of said day; that thereupon they seized and duly attached and secured a lien upon all the property of said debtors for $36,000; and that, upon a sale of the attached property, the plaintiffs realized nothing; and that the judgment debtors had no other property out of which the plaintiffs' claim could be paid.

Tenth. That at the time said message was delivered to said defendant, and throughout said day, the Western Union Telegraph Company had a line of wire in constant operation and in readiness to transmit messages between said points; and that it was the custom and usage of said defendant to forward messages by the line of said Western Union Telegraph Company when unable to do so on its own lines.

Eleventh. That said defendant was negligent in not notifying said plaintiffs of its inability to transmit said message over its own wires when received by it; and after the same had been so received, and said defendant had promised the immediate transmission thereof, it was its duty to have forwarded the same by the lines of said Western Union Telegraph Company; and that said defendant is liable to the plaintiffs for any loss resulting from such neglect.

Twelfth. That H. & B. Grunbaum have been totally insolvent ever since the 24th day of June, 1891, and plaintiffs have been unable to realize any sum whatever on their judgment against them.

Thirteenth. That the damages sustained by the plaintiffs by reason of the negligence of the defendant is the sum of $3,704.37, and such sum should bear interest at the legal rate from September 7, 1891.

And, as a conclusion of law from the foregoing, the court finds that the plaintiffs are entitled to a judgment against said defendant for the sum of $3,704.37, with interest thereon at the rate of 8 per cent. per annum since September 7, 1891, together with their costs and disbursements herein.

Plaintiff in error excepted to the 2d, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, and 13th, and to parts of the 4th and 5th, findings of fact, on the ground "that they are each and all contrary to the evidence, and that there is no evidence to support such finding and findings." Plaintiff in error also excepted to the conclusions of law in the case. The ruling of the court in making these findings and in overruling plaintiffs' exceptions to the same is assigned as error. This is an attempt to have this court re-examine the evidence in this case, and determine whether or not it supports the findings of the circuit court.

Section 649, Rev. St., is as follows:

"Issues of fact in civil cases in any circuit court may be tried and determined by the court without the intervention of a jury, whenever the parties or their attorneys of record file with the clerk a stipulation in writing

waiving a jury. The finding of the court upon the facts which may be either general or special, shall have the same effect as the verdict of a jury."

The seventh amendment to the constitution of the United States provides that:

"No fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law."

According to such rules, it could only be re-examined where the court in which the trial was had granted a new trial for sufficient reasons, or the appellate court awarded a venire facias de novo for some error which intervened in the proceedings. Parsons v. Bedford, 3 Pet. 433; Bassette v. U. S., 9 Wall. 38; Insurance Co. v. Folsom, 18 Wall. 237. Giving the findings of a court the same effect as the verdict of a jury, and it is evident that this court cannot review the evidence, and determine whether they are supported thereby. When bills of exceptions are taken to the ruling of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, such rulings may be reviewed in the appellate court. Rev. St. § 700; Norris v. Jackson, 9 Wall. 125; Martinton v. Fairbanks, 112 U. S. 670, 5 Sup. Ct. 321; Stanley v. Supervisors, 121 U. S. 535, 7 Sup. Ct. 1234.

In this case there were numerous exceptions taken by plaintiff in error to the ruling of the court in admitting evidence. Several of these exceptions relate to the admission in evidence of the certified copies of the papers in the case of Maurice L. Grunbaum, Dexter Horton & Co., J. A. Ford, and Fleischner, Mayer & Co. against H. & B. Grunbaum. The point of objection presented was that these certified copies failed to show that any inventory was filed in these cases, as required by law in the state of Washington, of the property attached as a part of the return of the sheriff. The sheriff, in his return, after stating the date of receiving the writ of attachment in each of the above cases, returned:

"By virtue and in pursuance thereof, I, on the same day, levied upon and attached as the personal property of the defendant named in said writ, and already in my possession by virtue of an execution No. 11,117 of the court docket contained in the inventory annexed to No. 11,119, of the court docket, by taking said property into my custody."

It appears that, at the date of making this return, no inventory was annexed to Case No. 11,119. Subsequently, however, the sheriff, by permission of court, amended his return, and did annex said inventory. The question arising in the consideration of this assigned error is as to whether the sheriff could amend his return so as to cure this defect by subsequently annexing this inventory. It is admitted that the statute law of Washington requires an inventory of the property attached to be attached to the return of the officer. There is no doubt but that the law allowing attachments of the property of a defendant in a civil action in certain cases, being a statutory remedy, must be strictly pursued. It would appear that section 322, 2 Hill's Ann. St. Wash., provided for such an amendment. It is as follows:

"This chapter shall be liberally construed and the plaintiff at any time when objection is made thereto, shall be permitted to amend any defect in the

complaint, affidavit, bond, writ or other proceeding, and no attachment shall be quashed or dismissed or the property attached released if the defect in any of the proceedings has been or can be amended so as to show that a legal cause for the attachment existed at the time it was issued, and the court shall give the plaintiff a reasonable time to perfect such defective proceedings."

The intention by virtue of this statute was to give a court large discretion in permitting amendments in attachment proceedings. There is no reason why every other paper or record in an attachment proceeding should be permitted to be amended, save a return of a ministerial officer who made the levy of the writ. This statute does not seem to have been construed by the highest courts of that state. If it should be held that no such authority was contained in this statute, we are confronted with another rule in such cases. In the case of Tilton v. Cofield, 93 U. S. 163, 167, the supreme court says: "Allowing amendments is incidental to the exercise of all judicial power, and is indispensable to the ends of justice." Again: "Where no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others." In that case, besides amending the declaration, the affidavit in the attachment proceedings was amended, and it was held proper under this general power incident to a court of justice. · This case was followed in Erstein v. Rothschild, 22 Fed. 61. If an affidavit in an attachment proceeding, which is the very foundation of this auxiliary proceeding, can be amended, much more should an officer be allowed to amend his return, in the discretion of the court, to the writ of the attachment therein. It may be said, generally, that the returns of ministerial officers are subject to amendment, in the discretion of the court to whom such application is made. Malone v. Samuel, 13 Am. Dec. 172, and note; 22 Am. & Eng. Enc. Law, 200, "Service of Process." There is no reason for any different rule in regard to the return upon a writ of attachment than the return on any other writ. It is claimed in this case that the return is a part of the levy of the writ. It is not so stated in the statute laws of Washington. See 2 Hill's Ann. St. Wash. § 300. · This defines what constitutes a levy upon personal property. In the case of Rowan v. Lamb, 4 Iowa, 468, it was held—and I think properly— that the return constitutes no part of the levy. It is further urged that the return gives the court jurisdiction, and with a return to the writ of attachment plaintiff would be deprived of his lien. In support of this we are cited to 1 Wade, Attachm. § 229. If this is applied to any other class of cases than actions in rem, I do not think it is correct. Service of a writ gives jurisdiction. A return is but evidence of service. In attachment proceedings the levy under the writ gives the lien; the return is evidence of the levy, and such evidence as a court can act upon. This was an action in personam, and the attachment proceedings were auxiliary thereto.

But we are not confronted with a state of facts contemplated in said section 229, because we have a return in this case, perfected, it is true, by amendment. When an amendment is allowed, to what time does it relate? The effect of an amendment is, unless restricted in some manner, to cure the error against which the amend-

ment is made, and render the return good ab initio.  1 Wade, Attachm. § 154.  When can an amendment be made?  It may be made after judgment, if no intervening rights are affected.  The same rule should prevail as in regard to other returns.  Id. § 151. An amendment to a return may be made after a sheriff has gone out of office, and after an action has been commenced against him. Smith, Sher. 214, 215, 408; Gavitt v. Doud, 23 Cal. 79.  The supreme court, in the case of Tilton v. Cofield, supra, quoted approvingly this language from the case of Green v. Cole, 13 Ired. 425: "Courts have the power to amend their process and records, notwithstanding such amendments may affect existing rights."  Generally, I think this question of the amendment of a return to a writ of attachment is called in question where the levy has been made upon real estate.  In such cases the return gives notice of the attachment. Usually, a copy of it is filed with the recorder of deeds.  But, when an officer has possession of personal property under a writ of attachment, it would appear all parties would have sufficient notice to put them upon inquiry as to his rights.  But there have been presented no intervening rights in this case which would prevent amendment to the return of the sheriff.  The return in the action of defendants in error was perfected by this amendment.  The return upon that was as defective as the others up to that date.  I think, therefore, the point made in these exceptions cannot be maintained.

The next exception is to the admission of certain evidence which was introduced to show what the sheriff did under his writ of attachment in regard to the possession of the sheriff under the writ.  As I have shown that it was proper to amend the return to the writ, which was done, it would appear that this was no more than cumulative evidence.  Whether or not, as between third parties or against a party not a party to an action in which a return is made, what was done in the matter of levying upon property can be proven by parol, it is not necessary in this case to consider. Wharton on Evidence (section 833) expresses the rule that an officer may "put in evidence supplementary facts not inconsistent with his return."  Nothing more was done in this case.  At all events, this evidence, if immaterial, did not affect the judgment in the case, and is therefore no ground for reversal of the same.  Mining Co. v. Taylor, 100 U. S. 37; Cooper v. Coats, 21 Wall. 105.

The point that the defendants in error should have brought suit to test the validity of the attachments prior to these instituted by them is not well taken.  The rule that in cases of tort the party injured should make reasonable exertions to render the injury as light as possible does not apply in this case.  There is no rule of law that would require the plaintiff in error to maintain a lawsuit against other parties with a view of protecting plaintiff in error from its own wrong, especially when it does not appear that such an action would have been successful.  Strause v. Telegraph Co., Fed. Cas. No. 13,531.

The objection to the testimony of Rothschild was not well taken. It is evident the object of his evidence was to prove insolvency of the Grunbaums.  This could be done in various ways.  Return of

an execution nulla bona is one way. The opinions of witnesses may be taken. Rothschild stated what means he had resorted to in order that the insolvency of H. & B. Grunbaum might be ascertained. In doing this, he made inquiries of H. Grunbaum concerning his affairs. It is stated in Abbott's Trial Evidence (page 617) that an "opinion as to solvency may be based partly on what was said by others acquainted with the person, at the place and at and before the time." Inquiries made of the debtor himself ought to be as competent evidence in forming an opinion as to solvency as inquiries made of other parties. Rothschild arrived at the conclusion that H. & B. Grunbaum owed about $97,000, and had assets of about $70,000 nominally. This was sufficient to show insolvency.

The twenty-fourth specification of error relates to the admission of the evidence of one Patterson in regard to an alleged custom of the plaintiff in error in taking telegrams intrusted to it for transmission to the office of the Western Union Telegraph Company's office for transmission at certain times, when its own wires were down. I think this evidence was proper, with the view of showing that it was not an impossibility for the plaintiff in error to send the telegram of defendants in error even if its wires were down; that on other occasions it had seen fit to send telegrams by that competing line in order to protect customers. Plaintiff in error had contracted, it appears from the findings of the court, to transmit this telegram of defendants in error at a time when it could not operate its line. If a party injured by another's tort or breach of contract has the active duty imposed upon him by law of making reasonable exertions to render the injury as light as possible, and, if possible, to prevent any damage, it would appear that one who has contracted to perform a service in one way, if he should find that way closed to his performance, should do what he could, by any other means practicable and available, to prevent damage to the one who has intrusted him with an important service. The evidence upon this point shows that plaintiff in error willfully stood by its contract when it knew the impossibility of performance thereunder. For these purposes, I cannot see that there was any error in admitting the evidence.

The last and important point in this case is as to whether the findings of the circuit court sustain its judgment. It is claimed that the stipulation contained in the printed words at the top of the telegraphic blank used by defendants in error, and with which they were acquainted, so limited its liability that plaintiff in error cannot be made responsible for damages occasioned by the delay in or failure to send the said message. There are stipulations in the said printed matter to the effect that the plaintiff in error shall not be liable for mistakes or delays in the transmission or delivery or nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor in any case for delays arising from unavoidable interruptions in the working of its lines. The finding was that, at the time plaintiff in error received the message in question, its lines were down between Portland and

Seattle; that this fact was known to plaintiff in error, and not to defendants in error. It is further found that plaintiff in error was fully apprised by the language of the message itself of the amount of plaintiffs' claim, the danger of its loss, and the necessity of its prompt protection. These facts were also made known to plaintiff in error at the time of the delivery of the message. The message itself was marked "Rush." As has been said, plaintiff in error contracted to transmit and deliver this message. At the time, its wires were down, and there was an impossibility in performing the contract as required. The general rule is that when the impossibility of performance is known to the promisor, but not known to the promisee, the former is liable in damages for failure to perform. 3 Am. & Eng. Enc. Law, subd. 73, p. 898, tit. "Contract"; 2 Pars. Cont. 673. In the work entitled "Communication by Telegraph," by Gray (section 18), this rule is expressed:

"If a telegraph company is unable, through a disarrangement of its lines or other cause, to do what it makes a business of doing, it must inform those who wish to employ it of the fact, and thus acquaint them with the advantage of employing other means. A telegraph company offers and is employed solely to effect the rapid communication of a message. The excuse for a failure to effect that communication that the company, when it made the contract, knew that it could not perform it, can hardly be deemed a valid one."

This language commends itself to me; and it is in accordance with the general rules in regard to contracts. When one party knows that another is contracting with him upon the belief that he has the means of performing the same, a concealment of the fact that he has no such means amounts to a fraud. Kerr, Fraud & M. 94; 2 Kent, Comm. marg. p. 482.

If the effect is given to the printed matter in the telegraphic blank above referred to claimed by the plaintiff in error, then it would give it the power to commit a fraud with impunity. It is generally held that a telegraph company may make reasonable rules for the management of its business; but the question as to whether such rules are reasonable is a matter for the determination of a court called to consider the same, and that such a company cannot relieve itself against gross negligence. True v. Telegraph Co., 11 Am. Rep. 156; Thomp. Electr. § 183, and cases cited.

If a telegraph company cannot make a regulation by which it is relieved from gross negligence, much less should it be allowed to stipulate against its own fraud in making a contract. It is agreed that an incorporated telegraph company, holding itself out to do the business of transmitting intelligence generally, is in the nature of a quasi public corporation. At all events, it is engaged in a public business, analogous to that of a common carrier. In many places there is no competing line, and it exercises a monopoly in the business of transmitting intelligence with rapidity. The telegraph has become a necessity in business transactions, and a company conducting such a business ought not, as a matter of public policy, to be allowed to formulate and maintain any regulations which would allow it to work a fraud upon those seeking to employ this necessary means of communication, and yet afford the person defrauded no adequate means of redress.

The next point presented is as to the amount of damages defendants in error should be entitled to recover in this case. It is claimed that, under the stipulation in the contract, they should be entitled only to the 94 cents paid for the dispatch. I do not think it is a reasonable regulation for a telegraph company to make a regulation that will allow it to commit a fraud, and then say that it shall be liable for only nominal damages. No one contracts with a telegraph company with the expectation that it is committing or will commit a fraud upon him. The usual doctrine is that any person who commits a fraud shall be responsible for the direct damages sustained thereby. If any one violates a contract, he shall be liable for the approximate damages the injured parties suffer, when they are such damages as might be reasonably expected to flow from the breach.

In the case of Hadley v. Baxendale, 9 Exch. 345, the rule was thus expressed:

"When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either as arising naturally—i. e. according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and this was known to both parties, the damages resulting from the breach of such a contract which they would reasonably contemplate would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

This language was quoted approvingly in the case of Primrose v. Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098.

In this case the special circumstances under which the contract was made were known, it appears from the finding of the court, to plaintiffs in error. Now a regulation which would take a telegraph contract out of the rules that apply to all other contracts ought not to be favored as a reasonable one, considering the circumstances under which many telegrams are sent. It has been claimed that the forcing a stipulation into a contract for the transmission of a message by a telegraph company which would exempt it from liability for gross negligence should be considered as having been agreed to under a sort of moral duress, and therefore void. Much more should a stipulation forced into a contract by such a company which would exempt it from a liability for a fraud be declared void. The question of stipulations upon telegraphic blanks is fully discussed in 25 Am. & Eng. Enc. Law, pp. 790–798. The authorities there collected, I think, sustain the author in the view that any stipulation which would exempt a telegraph company from liability for its gross negligence is void. Other text writers sustain the same view. Gray, Commun. Tel. § 40; Thomp. Electr. §§ 188–193. Many authorities might be collected to the same effect. The case of Primrose v. Telegraph Co., supra, does not establish a different doctrine. In that case the telegram was a cipher one. Neither its importance nor purport was known to the

company. There was a mistake in transmitting the same. The court held that the regulation which required that such a message should be repeated was a reasonable one. But there was no holding in that case that the company, by any regulation, could exempt itself from liability for gross negligence or a fraud. The conclusion I have reached, therefore, is that, if the stipulation has the force claimed for it in this case by plaintiff in error, it is void.

I have considered this question as though the stipulations set forth upon the printed blank do apply to the facts presented in this case, but I am of the opinion that neither in letter nor spirit do they apply to a case like the one at bar. This was a case where the company contracted to transmit a message for defendants in error, and did not have the means then of complying with the contract, and when it concealed this important fact, and without which, undoubtedly, it would not have been intrusted with the transmission of the same. The stipulations in the blank, I think, refer to cases where the telegraph company is able to comply with its contract, but, through the negligence of its employés, fails to transmit the telegram intrusted to it, or delays it, or is negligent in the manner of transmitting it, or is not able to send the telegram through defective appliances, but does not conceal this fact. It appears that there were other means for transmitting the message from Portland to Seattle. Hence the message could have been transmitted. Although it does not appear that the contract for its transmission was made with reference to the fact that plaintiff in error was accustomed to send telegrams intrusted to it for transmission by the Western Union Telegraph Company lines, still it could have done so, and protected defendants from the damage it incurred. It seems, however, that the plaintiff in error chose to stand by the contract it had made to transmit the message over its own lines, when at the time it knew it was unable to do so.

Under the rule heretofore expressed for assessing damages, I find that the court was right in assessing defendants in error's damages at $3,704.37. The court found that, in addition to this, the defendants in error were entitled to interest on the same from September 7, 1891, at the legal rate, which appears in Oregon to be 8 per cent. This finding is claimed as error so far as the interest is concerned. I think there was no warrant for finding that the amount of damages defendants in error sustained should bear interest from the day the suit was commenced. In the complaint the allegation of the amount of damages is $3,704.37. The demand for judgment is for the same amount. The claim in this case was for unliquidated damages. Such demands do not bear interest. 1 Suth. Dam. p. 609; Hawley v. Dawson, 16 Or. 344, 18 Pac. 592.

In the case of Green v. Van Buskirk, 7 Wall. 139, the supreme court, speaking by Justice Field, said:

"Interest is not allowable as a matter of law, except in cases of contract or the unlawful detention of money. In cases of tort its allowance as damages rests in the discretion of the jury."

When interest is taken into consideration in assessing damages, it forms a part of the damages found, and is included in the general amount, and is not assessed on the amount of damages found. The only claim for damages was, as I have stated, $3,704.37. It would have been improper to give a judgment for more damages than were claimed in the complaint. Palmer v. Reynolds, 3 Cal. 396; Pierce v. Payne, 14 Cal. 420.

As the amount in which the judgment is defective can be clearly ascertained from the findings and the judgment itself, I see no reason for reversing the judgment in toto, and sending the cause back for a new trial. In such cases the court may direct the circuit court to enter such judgment as should have been entered under the pleadings and findings. Ft. Scott v. Hickman, 112 U. S. 150, 5 Sup. Ct. 56.

The judgment as entered by the circuit court is reversed, and the cause remanded to that court, with direction to enter a judgment for the plaintiffs in that court, against the defendant therein, for the sum of $3,704.37, and costs of suit, taxed at ―――――.

HAWLEY, District Judge (concurring). I concur in the conclusions reached by my Brother KNOWLES on all the points discussed in his opinion and in the judgment therein announced. But I base my concurrence, with reference to the merits of the case, upon the general principles clearly enunciated in the quotation from Gray on Telegraphic Communications (section 18), which seem to me to be sound, equitable, and just. It was the duty of the telegraph company, after having been informed of the importance of the message and of the necessity of its prompt transmission, to have then and there informed the sender of the message of the fact that its wires were not at that time in working order. It could not avoid any liability by concealing the truth as to the condition of its line. It was its duty to deal with its customer in good faith and upon equal terms; to notify him of the true state of the facts, so as to leave it optional with him to try the other line, or take his chances on the line in question being speedily repaired. By failing to perform this duty, it deprived itself of the right, which it otherwise might have had, of availing itself of the terms and conditions of the stipulation and rules which were printed upon its blank form of messages.

McKENNA, Circuit Judge. I concur in the judgment, for the reasons stated by Judge HAWLEY.