### SWAN v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Seventh Circuit.   January 5, 1904.)

No. 1,006.

1. TELEGRAPHS—MESSAGES—TRANSMISSION—DELAY—NOTIFICATION TO SENDER—NEGLIGENCE.

Where a mining expert delivered a telegram to defendant telegraph company advising the purchase of certain mining stock, which message he directed to be transmitted to plaintiff and 293 others, who were his clients, under an agreement to transmit the same at once, there being other methods of rapid communication between the sending office and plaintiff's place of business, it was the duty of the telegraph company, on discovering that it would not be able to transmit such message to plaintiff without delay, by reason of a defect in its wires, to promptly notify the sender of such fact, he being a person well known to the company's agents at the sending office, and easily accessible.

2. SAME—DAMAGES.

Where a mining expert delivered a message to a telegraph company to be sent to plaintiff, his client, advising the purchase of certain mining stock, which defendant agreed to promptly transmit, but failed to notify either the sender or the addressee that there had been several hours' delay, by reason of which the addressee was led to purchase the stock at a higher price than he would have been compelled to pay if the message had been promptly delivered before the close of an exchange on the day it was sent, the addressee was entitled to recover the difference between what he had to pay for the stock which he purchased the succeeding day and what the stock would have cost him if the telegram had been transmitted within a reasonable time after it was received for transmission.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Henry L. Clarke, for plaintiff in error.

P. B. Eckhart, for defendant in error.

Before GROSSCUP and BAKER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This action was brought by Charles J. Swan, the plaintiff in error, against the Western Union Telegraph Company, to recover damages for losses sustained on account of the failure of the defendant company to give notice of the delay in sending an important business telegram relating to the purchase of certain mining stock on

¶ 1. Delay in delivery of telegram, failure to disclose that line was not in working order, see note to Pacific Postal Telegraph Cable Co. v. Fleischner, 14 C. C. A. 177.

¶ 2. Measure of damages in actions against telegraph companies, see notes to Western Union Telegraph Co. v. Coggin, 15 C. C. A. 235; Same v. Morris, 28 C. C. A. 59.

See Telegraphs and Telephones, vol. 45, Cent. Dig. § 72.

the Boston Stock Exchange. A jury was waived, and the case tried by the court upon the following stipulation of facts, to wit:

"It is hereby stipulated and agreed by and between the parties herein, by their respective attorneys, that:

"The plaintiff makes no claim against the defendant on account of negligent delay in transmitting and delivering the message in controversy, and said question may be considered by the court as eliminated from the case; but the plaintiff charges the defendant with negligently failing to give due notice of delay of the message, or by reason of the '3 27 PM' under the sender's signature, with wrongfully misleading the plaintiff as to such delay, as set forth and charged in the declaration. On May 1, 1901, and for some time theretofore and thereafter, the defendant corporation was engaged in and operating a public telegraphing business and service for compensation between and within Chicago, Illinois, and Houghton, Michigan. On said 1st day of May, 1901, one Horace J. Stevens, a mining expert, and editor of certain copper-mining publications, and assistant commissioner of mineral statistics for the state of Michigan, occupied an office in the said town of Houghton, and was well known to the local office of the defendant at Houghton. On the said 1st day of May, 1901, at about 9:15 a. m., the defendant, at its public office in Houghton, Michigan, received from said Horace J. Stevens, of Houghton, Michigan, a communication to be telegraphically transmitted and delivered to the plaintiff herein in words and figures as follows:

"'Houghton, Michigan, May 1, 1901.

"'Dr. C. Joseph Swan,
"'34 Washington St., Chicago.

"'Ten to twenty dollars quick rise in Mohawk. Has Wolverine lode rich as Quincy beside million dollars worth "Mohawkite" almost spot cash opened in three upper levels. Advise quick purchase.

"'Horace J. Stevens.'

"And about four o'clock in the afternoon of the said 1st day of May, 1901, the defendant delivered to the plaintiff, and he paid the charges on, a typewritten message in words and figures as follows:

"'253. CH. MD. JO. 31 Collect,

"'Houghton, Michigan, May 1, 1901.

"'Dr. C. Joseph Swan,
"'34 Washn St Chgo,

"'Ten to twenty dollars quick rise in Mohawk. Has Wolverine lode rich as quincy beside million dollars worth "Mohawkite" almost spot cash opened in three upper levels advise quick purchase.

"'Horace J. Stevens.
"'3 27 PM'

"The plaintiff had no notice that the message accepted as aforesaid by the Houghton office of the defendant would be or had been delayed in the transmission and delivery beyond the time ordinarily required for the transmission and delivery of such a message or for more than one-half hour after its acceptance by the defendant. The message first above quoted was accepted by the defendant from the said Stevens in manner and form as follows, viz.: The entire message, except the name and address of the sendee, was written by Stevens on one sheet of paper, and on a number of other sheets were written the names and addresses of 294 sendees, including the plaintiff. When the said message and lists of sendees were presented by Stevens at the Houghton office of the defendant a consultation was had between Stevens and the manager of the said office as to the most expeditious and convenient method of transmitting the message; and at the suggestion of the said manager it was arranged that the body of the message should be wired to Chicago and followed by the list of addresses for Chicago and points beyond, the Chicago office to relay the message to such further points. Thereupon the sheets of addresses were rearranged by Stevens, and numbered in red pencil, and the sheet bearing the plaintiff's name and address became the first sheet, with the plaintiff's name number 17 on the list, and preceded by 13 addresses for Chicago and points beyond and 3 'local' addresses. The said manager of the defendant advised Stevens that the transmission of the matter so accepted would

be promptly proceeded with, and the said Stevens had no notice that the message to the plaintiff would be delayed beyond the time that would ordinarily be required for the transmission and delivery of such a message so accepted.

"On the said 1st day of May, 1901, there were, besides the service of the defendant, two other available means of rapid communication from Houghton, Michigan, to Chicago, Illinois, viz., the service of the Postal Telegraph Co. and the long-distance telephone, the latter directly connecting with the office of the plaintiff. From the opening up to the hour of noon on the Boston Stock Exchange on the said 1st day of May many hundred shares of Mohawk stock sold at 39, and on said day until the noon hour there was not more than $\frac{1}{4}$ of one point of fluctuation from 39 in the sales of said stock. Thereafter the said stock rose, and the last sales before the close of said exchange at 3 p. m. of the said day were at 47, and the following morning the market opened at 51. The plaintiff could have communicated by telephone with his brokers in Chicago, Wm. H. Colvin & Co., at any time on the said 1st day of May, and the said brokers then had such security for the plaintiff's orders that they would at once have proceeded to execute by telegraph his telephone order to buy one hundred shares of Mohawk on the Boston Exchange. The plaintiff would testify that he inferred that the message delivered to him as aforesaid had been transmitted within the time ordinarily required for such a message, and had been sent by the said Stevens after the close of the Boston Stock Exchange, whereon Mohawk was listed, on the said 1st day of May, and that such message applied to the market of the following or 2d day of May, 1901. The plaintiff would testify that he further inferred and understood, and was not informed to the contrary, that the hour date of '3 27 PM' appearing directly under the signature of the said Stevens on the said message indicated the hour at which the said message had been delivered by the said Stevens to the defendant. On the morning of the 2d day of May, 1901, about 10:30 a. m. (Central time), the aforesaid brokers of the plaintiff, at his order to buy 'under 50,' bought for him on the Boston Exchange one hundred shares of Mohawk at 49½, which was as high as any subsequent sale of that day, and several points below a few earlier sales of the same morning; and he would testify that he ordered such purchase about 10 a. m. on the ground of the advices contained in the aforesaid message, and upon his aforesaid inferences and understanding as to the time of sending of said message. Later on the said 2d day of May and on the next following day Mohawk fell, and on the 3d day of May, 1901, closed at 42, and thereupon the plaintiff made inquiry of the said Stevens by long-distance telephone as to the reason for such fall, and then and there for the first time it became known to the plaintiff and to the said Stevens that the above-stated delay of the message of Stevens had occurred. Thereupon the plaintiff made inquiry on the said 3d day of May, 1901, at the Chicago office of the defendant, as to the cause of the aforesaid delay and the Chicago office wired the inquiry to the Houghton office, and the latter wired back that 'wire trouble' had 'delayed (Houghton) business all around (on May 1, 1901)'; and the said Chicago office referred the plaintiff to the New York office of the defendant as to any claim for damages, and such claim was forthwith made in writing by the plaintiff, and from time to time repeated until the beginning of the present suit. The plaintiff would testify that the one hundred shares of Mohawk purchased as aforesaid were held by him until the autumn of 1901, and finally sold at 49, and while so held their value at one time decreased to about 30, and at another time the plaintiff was called upon to pay and did pay an assessment of three hundred dollars on the said shares; and he also paid to his brokers one-eighth of one point per share for buying and one-eighth of one point per share for selling said one hundred shares; and while so holding said shares he was deprived of all interest that might have accrued from the moneys so invested.

"This suit was not brought until after the refusal of the defendant to settle the aforesaid claims of the plaintiff. And the foregoing statement of facts shall constitute all and the only evidence to be submitted by either party on the trial of this cause.

"Chicago, June 30th, 1902.          C. Joseph Swan,
                                    "By Henry Love Clarke, His Attorney.
                          "Western Union Telegraph Co.,
                                    "By Henry D. Estabrook, Its Attorney."

The court below, upon the hearing, after overruling several proper special requests to find for the plaintiff, rendered judgment in favor of the defendant. We think this was error, and that judgment should have been given in favor of the plaintiff for $1,050 and interest, that being the amount of damages sustained by him by reason of the defendant's neglect in not giving notice of the obstruction in its telegraph lines between Houghton and Chicago; the stipulation showing that at the first opportunity after the receipt of the message he paid $49.50 per share for 100 shares which would have cost him $39 per share if the message had been sent in due course of business on the morning of May 1st, within a reasonable time after its receipt at the defendant's office in Houghton. It seems evident that the duty was with the defendant company to send the message in due course, or, if it was unable from obstruction of its lines to do so, then to notify the sender of that fact so that he might avail himself of one of the two other methods of quick communication that were open to him. It does not appear from the statement of facts whether the obstruction in the lines existed at 9:15 a. m. of May 1st, the hour when the message was handed in at the Houghton office, or came in after that time. If we were to indulge in any presumption from the facts that are in evidence, it would seem reasonable to suppose that the inability existed at the time of receiving the message, when, according to the stipulation of facts, the company's manager advised Mr. Stevens that the transmission of the message would be promptly proceeded with. Thirty minutes would probably have given ample time for transmitting the message if proceeded with according to such promise, but it was not sent until nearly seven hours after its receipt. So that, if the lines were not down at the receipt of the message, they were but shortly after; otherwise the message would have been sent. But that question does not seem to be material, as the obligation resting upon defendant would be of a similar character in either case. If the lines were already down, it was the duty of the defendant to so inform the sender, so that he could avail himself of another line of communication, or, if he so chose, to take the chances on the defendant's restoring its service in time. If communication was obstructed after the message was received, this fact being unknown to Mr. Stevens, it was equally incumbent upon the defendant to give him timely notice of that fact. Without any explanation or excuse for the delay in sending the message from 9:15 in the morning to 4 o'clock in the afternoon, or of notifying the sender of the disability to send, the inference of culpable neglect is palpable; and, to aggravate the case, the company at some point, whether at Houghton or Chicago does not appear, placed under the sender's name the figures "3 27 PM," from which the plaintiff understood that the message was received by the company at Houghton at that time, which would have given the very reasonable time of 33 minutes for its transmission from the Houghton office to Chicago. But under the stipulation we are not at liberty to lay any stress upon this circumstance. There is nothing in the case to show what these figures placed under the sender's name import—whether they are to note the time of the receipt of the message at Houghton, the time of sending, or the time of its receipt at the office in Chicago. It was open to the plaintiff to make inquiry, if he did not know what

the figures meant. There is no evidence that he did so. He assumed that the figures noted the time the message was received by the company at its office in Houghton. These figures placed by the company under the sender's name are relied upon by the plaintiff as one ground of negligence, but we place the decision of the case solely on the ground of the negligence of the defendant in failing to give notice that its lines were obstructed so that the message could not be sent. Whether the obstruction in the lines existed when the message was delivered, or occurred after that time, it was equally incumbent upon the company to notify the sender of the fact, so that he could send the message by another line of communication. That the defendant's line was out of order was a fact unknown to the sender, but must have been well known to the defendant. Under these circumstances it was the plain duty of the defendant to give timely notice of its inability to send the message.

We have assumed thus far that there was delay due to wire trouble as stated by the Houghton office. Counsel for appellee, however, insist that, though there is thus a showing of delay, there is no showing that the delay was unreasonable, or that the Houghton office had such knowledge concerning the delay as imposed upon it the duty to inform the parties interested that the message had been delayed; and in support of this insistence point to the opening paragraph of the stipulation that "the plaintiff makes no claim against the defendant on account of negligent delay in transmitting and delivering the message in controversy, and said claim may be considered by the court as eliminated from the case." While such paragraph exempts appellee from damages in this suit on account of negligent delay in transmitting the message, it works no exemption from damages growing out of the negligent failure to give notice of the delay; for appellee is expressly charged in the stipulation with negligently failing to give due notice of the delay. The two grounds of action thus indicated—the one eliminated and the other clung to—are distinct. It is with respect, then, to the second ground, only, that the fact of delay cuts any figure. The stipulation shows the fact of delay; but leaves it open whether the cause and nature of the delay were such that the agent should have given notice to the parties interested; and on this open question of fact, the evidence of which was wholly within the possession of appellee, the burden of proof, in our opinion, was on the appellee.

Our view may be summed up thus: The suit being for damages growing out of the agent's failure to give notice of the delay, and the bare fact of delay appearing in the stipulation, the burden was on appellee to show the nature and cause of the delay; and, in the absence of such showing it will be presumed that the agent at Houghton had such information as imposed on him the duty of informing the parties interested—a duty that was not in fact performed. The case is not distinguishable in principle from Fleischner v. Pacific Postal Telegraph Cable Co. (C. C.) 55 Fed. 738, affirmed by the Circuit Court of Appeals for the Ninth Circuit, 66 Fed. 899, 14 C. C. A. 166. The general rule applicable in that case was laid down by that court as follows:

"As has been said, plaintiff in error contracted to transmit and deliver this message. At the time its wires were down, and there was an impossibility in performing the contract as required. The general rule is that, when an

impossibility of performance is known to the promisor, but is not known to the promisee, the former is liable in damages for failure to perform. 3 Am. & Eng. Enc. Law, subd. 73, p. 898, tit. 'Contract'; 2 Parsons, Cont. 673."

The analogous rule more specifically adapted to telegraph companies is laid down by Gray in his work entitled "Communication by Telegraph" (section 18), as follows:

"If a telegraph company is unable, through a disarrangement of its lines or other cause, to do what it makes a business of doing, it must inform those who wish to employ it of the fact, and thus acquaint them with the advantage of employing other means. A telegraph company offers and is employed solely to effect the rapid communication of a message. The excuse for a failure to effect that communication that the company, when it made the contract, knew that it could not perform it, can hardly be deemed a valid one."

That rule, as there laid down, commended itself to the United States Circuit Court of Appeals in the case afore cited, and commends itself to this court as applicable to the case in hand.

It appears from the agreed facts that the plaintiff was one of 294 persons to whom this same message was to be sent. A list of these persons was prepared, with the plaintiff's name standing as No. 17 in the list, preceded by 13 other addressees for Chicago and beyond and 3 local addressees. There was to be but one dispatch for these 294 customers, so that the profits, considering the amount of work to be done, would no doubt be considerable. It does not appear whether or not this circumstance had any influence upon the conduct of the company in retaining the dispatch for so many hours without giving notice to Mr. Stevens, who had an office in Houghton, was a public character, and well known to the local office of the defendant at Houghton, that an obstruction in the wires rendered it impossible to transmit the message. But whether the inducements for retaining and sending the message, rather than having another company do it, were great or small, the defendant had a duty to perform. Although not a common carrier in the sense of being insurers, a telegraph company owes an obligation to the public analogous to that of a common carrier.

On the question of damages we have encountered no such difficulty as seems to have been experienced by the court below in finding a proper measure of damages for the case. If the plaintiff was entitled to recover even nominal damages, that would be better than to give a judgment for costs against him. The proper measure of damages is what the plaintiff lost through the negligence of the defendant, which was the difference between what he had to pay for the stock on the morning of May 2d and what it would have cost him in the forenoon of May 1st, when he should have received the dispatch, or notice that it could not be sent.

The judgment of the court below is reversed, and judgment ordered in favor of the plaintiff in error for the sum of $1,050, with interest from the 2d day of May, 1901, besides costs.