## CZIZEK v. WESTERN UNION TELEGRAPH CO.

(Circuit Court of Appeals, Ninth Circuit. April 4, 1921. Motion to Amend Judgment and Rehearing Denied May 16, 1921.)

No. 3543.

1. **Exceptions, bill of** ⊙⟼60(1)—**Properly stricken when not prepared and served within time allowed by rules.**

   Where no bill of exceptions was prepared and served within 10 days after the denial of a motion to remand to a state court, the time allowed by the rules, or during the term of court at which such order was made, the court properly struck out the portion of the bill of exceptions subsequently prepared and served pertaining to the motion to remand.

2. **Exceptions, bill of** ⊙⟼60(1)—**Motion to strike properly denied, though rules not complied with.**

   A District Court had authority to deny a motion to strike the bill of exceptions, though not prepared and submitted as required by the rules of the court.

⊙⟼For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Commerce ⊚⇒85—Limitations of liability sanctioned by Interstate Commerce Commission are binding.**

Under Act June 18, 1910, bringing the interstate business of telegraph companies under federal control, where a company's rules limiting its liability for mistakes or delays in transmission or delivery are on file with the Interstate Commerce Commission, their reasonableness is primarily a question for the Commission to determine, and when sanctioned by the Commission they are binding.

**4. Telegraphs and telephones ⊚⇒54(5)—Limitation of liability held inapplicable to total failure to transmit.**

Conditions on the back of telegraph blanks, providing that the company should not be liable for mistakes or delays in transmission or delivery, or for nondelivery, except for specified amounts for unrepeated and repeated messages, or for more than $50 in any case unless a greater value was stated and an additional sum paid, and that it should not be liable unless the claim was presented in writing within 60 days after the telegram was filed, had no application to the company's gross negligence in totally failing to transmit a message at all.

**5. Telegraphs and telephones ⊚⇒54(3)—Provision as to nonliability for obscure messages held inapplicable.**

A condition on the back of a telegraph blank, providing that the company should not be liable for errors in cipher or obscure telegrams, *held* to have no application to a message transmitting a third party's offer to purchase stock; it being perfectly plain on its face.

**6. Telegraphs and telephones ⊚⇒70(1)—Difference between offer for stock and subsequent value held measure of damages.**

Where a telegram sent to plaintiff, stating that a third party offered $90 a share for stock in a bank, was not transmitted, and if plaintiff had received it he would have sold at that price, but a few days afterwards the bank failed, and the stock became practically worthless, the measure of damages was the difference between the offered price and the value about the time plaintiff learned of the sending of the message and called upon the company's manager regarding it.

In Error from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by J. A. Czizek against the Western Union Telegraph Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Richard H. Johnson, of Boise, Idaho, for plaintiff in error.

Beverly L. Hodghead, of San Francisco, Cal., and Richards & Haga, of Boise, Idaho (Francis R. Stark, of New York City, of counsel), for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Action instituted in the state court for damages because of failure to forward and deliver a telegram dated at Boise, Idaho, November 30, 1917, addressed to J. A. Czizek, 5767 Shafter avenue, Oakland, Cal., and reading as follows:

"Miller advises Idaho National sold to Pacific offers me ninety dollars per share otherwise wait year and chances of liquidation says if fails to get two thirds stock liquidation will follow. Will you take ninety dollars per share for yours I am inclined to accept offer for mine. Answer, T. J Jones."

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On petition of the telegraph company the case was removed to the federal court, and after trial judgment was rendered in favor of the telegraph company.

We must first notice a question of jurisdiction presented by plaintiff in error, and a motion to strike the bill of exceptions presented by defendant in error. Removal from the state court to the United States court in the district of Idaho was on the ground that Czizek was a citizen of Idaho and the defendant a New York corporation. Czizek moved to remand to the state court on the ground that he was a citizen and resident of California. In support of his motion affidavits were filed, and defendant filed counter affidavits. On October 10, 1919, the court denied the motions. Exception was allowed, but no bill of exceptions covering the ruling was prepared or settled during the term of court at which the ruling was made, nor was any order granted for an extension of the time in which to prepare a bill of exceptions.

The telegraph company by answer denied the allegations of the complaint in part, but admitted the presentation of the message by Jones to the telegraph company, receipt and acceptance by the company, and payment of the regular charges. It also admitted that Czizek and Jones were told at the office of the telegraph company in Boise that the message never had been sent. Other defenses are based upon the following conditions printed on the back of the telegraph blank:

"To guard against mistakes or delays, the sender of a telegram should order it *repeated*; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, *this is an unrepeated telegram and paid for as such*, in consideration whereof it is agreed between the sender of the telegram and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any *unrepeated* telegram, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any *repeated* telegram, beyond fifty times the sum received for sending the same, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines; nor for errors in cipher or obscure telegrams.

"2. In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for the nondelivery, of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of *fifty dollars*, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the company for transmission, and an additional sum paid or agreed to be paid, based on such value equal to one-tenth of one per cent. thereof. *   *   *

"6. The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the telegram is filed with the company for transmission."

Defendants also pleaded that the message was interstate, subject to the rules of the Interstate Commerce Commission.

On June 5, 1920, plaintiff petitioned for a new trial, and on June 17, 1920, the court overruled the motion and granted plaintiff until July 8, 1920, within which to file and serve a proposed bill of exceptions to the rulings, findings, and decision of the court. The bill of exceptions contains all the evidence and was filed and served on July 2, 1920. De-

272 F.—15

fendant moved the District Court to strike the proposed bill of exceptions from the file. The court denied the motion to strike the entire bill, but struck out the part which related to the motion to remand, for the reason that a "bill of exceptions was not prepared and served within the 10 days allowed by the rules after the order denying the motion was made, or during the term of court at which the order denying the motion to remand was made." Exception was saved, and the bill of exceptions was settled July 16, 1920.

[1, 2] The time for preparing a bill of exceptions to the ruling on the motion to remand expired October 20, 1919, and the term at which such ruling was made expired on February 7, 1920; but as to the other matters the extensions granted were during the term of the court at which trial was had, and the time for preparing bills of exceptions did not expire until July 8th. Under the circumstances, after the court decided the issue of fact as to residence, it was right in retaining jurisdiction and in striking the portion pertaining to the motion to remand. Anderson v. United States, 269 Fed. 65. The court also had authority to deny the motion to strike the other portions of the bill of exceptions as presented, although they were not prepared and submitted as required by the rules of the court. Hunnicutt v. Peyton, 102 U. S. 333, 26 L. Ed. 113; Russo-Chinese Bank v. National Bank of Commerce, 187 Fed. 80, 109 C. C. A. 398.

The main issues of the case are therefore properly for consideration. The facts are:

Plaintiff owned 50 shares of stock in the Idaho National Bank, worth on their face $5,000. T. J. Jones owned 15 shares of the same stock. Miller, a stockholder, wished to buy plaintiff's stock in order to effect a merger of two banks. Plaintiff told Miller that he wished to sell, but no agreement was reached. Plaintiff said he was going away, but on his return would be ready to negotiate. Plaintiff told Jones what Miller said, and authorized Jones to negotiate with Miller for him. Miller then went to California, and never received the telegram. On December 1st Jones' son inquired at the telegraph office if a message had come for his father, and was told there was none. Mr. Jones, Jr., asked the attendant to see if the telegram had been sent. She looked through some files and said it had been sent. On the next day, Jones, Jr., asked again if the message had been sent, and was told by the attendant that Czizek had received the telegram. Czizek testified that, if he had received the telegram, he would have telegraphed acceptance of $90 per share. Jones sold his own 15 shares at $90 and received the money therefor.

Meanwhile the Idaho National Bank went into liquidation and the stock became valueless and remained so. About February 14, 1918, Czizek returned to Boise and learned that the message to him from Jones had been given to the telegraph company on November 30th to forward. Czizek and Jones at once called upon the local manager of the company, who promised investigation. On February 14, 1918, the manager in Boise wrote that the message had failed in transmission, and inclosed a check for the amount paid as toll. On February 18th Jones returned the check, writing that acceptance might be construed

as settlement. The general manager at Boise then went to see Jones and spoke of settlement, upon the basis of the value of the stock and the amount Miller offered. On June 18th plaintiff made formal demand. On June 19th the manager wrote that the letter had been forwarded to the company for consideration, and inquiring as to the value of the stock. Thereafter Czizek received a letter from the district superintendent of the telegraph company, dated July 2, 1918, at Salt Lake, acknowledging claim for $4,500 damages for failure to transmit the message, and advising him that the matter had been taken under immediate investigation, and that he would be communicated with upon the conclusion of the investigation. The letter also advised Czizek as follows:

"However, more than 60 days having elapsed since date claim message was filed, our investigation will be conducted without prejudice to the situation created by your failure to bring matter to our attention at an earlier date."

After waiting a reasonable length of time and hearing nothing, this action was commenced in June, 1919.

[3] The principal contentions of the plaintiff in error are that there is no provision requiring presentation in writing within any specific time after plaintiff learns of defendant's default, and that both the time and manner of presenting the claim were waived by defendant. In Gardner v. Western Union Teleg. Co., 231 Fed. 405, 145 C. C. A. 399, an action was brought by the addressee of a telegram for delay in the delivery of an unrepeated message. The terms of the contract between the telegraph company and the sender of the telegram were the same as in the present case. The Court of Appeals for the Eighth Circuit held that upon principle the plaintiff was bound by the regulation in relation to the presentation of his claim for damages and said:

"Without the contract between Scoville [the sender] and the company, the latter owed the plaintiff no duty, and hence there could be no negligence in the absence of the contract. So it plainly appears that plaintiff would have no cause of action, except for the contract, because the duty of the company arose from the contract. May the plaintiff charge the company with the duty arising from the contract, and at the same time repudiate one of the conditions upon which the duty was assumed? We think not."

That case has the express approval of the Supreme Court in Postal Telegraph Cable Co. v. Warren-Godwin Lbr. Co., 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. 118, where the court held that since the act of Congress of June 18, 1910 (36 Stat. 539), the interstate business of telegraph companies was brought under federal control, and that the provisions of the statute which brought telegraph companies under the act to regulate commerce placed them under the administrative control of the Interstate Commerce Commission, and that they became subject to a uniform national rule, and that there was no room for the exercise by the several states of power to regulate by penalizing the negligent failure to deliver promptly an interstate telegram. The same general doctrine was reaffirmed in Western Union Teleg. Co. v. Boegli, 251 U. S. 315, 40 Sup. Ct. 167, 64 L. Ed. 281. Inasmuch as the record discloses that the telegraph blank on which the message involved was written is on file with the Interstate Commerce Commission, as are the rules governing unrepeated messages and like matters, questions of the

reasonableness of the regulations on the back of the blank are primarily for the Interstate Commerce Commission to determine. Mitchell Coal & Coke Co. v. Penn. R. R. Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472; Erie R. R. Co. v. Stone, 244 U. S 332, 37 Sup. Ct. 633, 61 L. Ed. 1173; Western Union Teleg. Co. v. Bank of Spencer, 53 Okl. 398, 156 Pac. 1175.

In Cultra et al. v. Western Union Teleg. Co., 44 Interst. Com. Com'n R. 670, approved by the Supreme Court in Postal T. Co. v. Godwin, supra, the Commission held that it was the intention of Congress to put under the jurisdiction and control of the Commission the rates and practices of interstate telegraph companies, "as well as the rules, regulations, conditions, and restrictions affecting their interstate rates." There, the rate which was used by the senders of the telegram was an unrepeated one to which the Commission held there was attached as a fundamental feature a restricted liability. An error of the telegraph company, caused damage. The telegram was a so-called night letter, with charges prepaid as for an unrepeated night letter between the point in Kansas and the city of San Francisco. The conclusion reached was that rules classifying messages are binding upon the telegraph company and upon all those who avail themselves of the services of the telegraph company. Under these recent decisions the Interstate Commerce Commission has control of the regulation of rates and of the practices of the company, and by sanctioning a rule whereby liability of the company is restricted the rule is made binding. To like effect are Haskell I. & S. Co. v. Postal Teleg. Cable Co., 114 Me. 277, 96 Atl. 219; Western Union Teleg. Co. v. Dant, 42 App. D. C. 398, L. R. A. 1915B. 685, Ann. Cas. 1916A, 1132.

[4] But, while the rules just examined and the cases discussing them show the trend of modern decision, we are not ready to hold that the case before us is brought within them. This is not an instance of delay or error in transmission or in delivery, such as is contemplated by the rules referred to, but is one where the telegraph company, holding itself out as ready and able to perform service for a valuable consideration fixed by itself and paid to it, undertook to transmit a message and without any excuse at all failed completely to forward the message or to make an effort to fulfill its obligations. Such inattention is not within the terms printed upon the back of the message, which as far as pertinent are held to form part of the contract between the sender of the message and the telegraph company. Reasonable regulations and terms, the purposes of which are to restrict the liability of the company for consequences of negligence by reason of the omissions of its employees or the improper or insufficient performance of duty in transmission and delivery, should not be construed as absolving the company from all obligation to perform the duty for which it was created. Public policy, so we think, would not permit of the approval of regulations which would relieve the company from liability for such a total failure to live up to its duty; and in the absence of a controlling decision we must hold that no regulation of the company has released it from liability for its gross negligence in the premises. Pac. Postal

Teleg. Co. v. Fleischner, 66 Fed. 899, 14 C. C. A. 166; Candee v. W. U. Teleg. Co., 34 Wis. 471, 17 Am. Rep. 452; U. S. Teleg. Co. v. Wenger, 55 Pa. 262, 93 Am. Dec. 751.

In accord with what we have said, the clauses with relation to unrepeated and specially valued messages do not apply. There was no mistake in verbiage, and as the message was never sent it was, of course, impossible to repeat it. As bearing upon the question we cite Western U. Tel. Co. v. Cook, 61 Fed. 624, 9 C. C. A. 680; Pac. P. Tel. Co. v. Fleischner, 66 Fed. 899, 14 C. C. A. 166; Swan v. W. U. Teleg. Co., 129 Fed. 318, 63 C. C. A. 550, 67 L. R. A. 153; Postal Tel. Co. v. Nichols, 159 Fed. 643, 89 C. C. A. 585, 16 L. R. A. (N. S.) 870, 14 Ann. Cas. 369.

It is earnestly argued that, even if gross negligence is found, the valuation clause in the contract of transmission, hereinbefore quoted, must be held to limit the recovery to $50. Granting such a restriction is valid and binding where there has been mistake or delay in transmission or delivery, or where the message has been transmitted, but not delivered, whether such errors have been caused by the negligence of the servants of the company or otherwise, we do not construe nondelivery as the full equivalent of nontransmission. Nondelivery might be because of the carelessness of a boy employed by a receiving office to deliver a transmitted message. If the company used all reasonable care to employ a trustworthy messenger to deliver at a designated place and to a named person, but the messenger should fail to deliver and damages are the result, it may well be that the nondelivery clause as a reasonable one would relieve the company of liability for more than $50. But we cannot get away from the all-important fact that this is a case of nontransmission without excuse, and as such is not covered by clauses which are predicated upon the supposition that the company has made reasonable effort to transmit over its wires.

[5, 6] Regarding the case, therefore, as one of gross negligence against the company for failing to perform its undertaking, the liability should be for such damage as plaintiff in error actually sustained. The meaning and import of the message were perfectly plain on face of the paper; hence, cases where cipher messages were involved are not controlling. Czizek's testimony is positive, and the circumstances sustain it, that he would have sold the stock at the price offered in the message that was not transmitted, and the evidence is that he would have been paid the price offered; but a few days afterwards, because of the failure of the bank, the stock became practically worthless. Under the facts, the difference between what he was offered, and would have accepted, and the value of the stock at about the time he called upon the manager at Boise, is the measure of damage. U. S. Teleg. Co. v. Wenger, 55 Pa. 262, 93 Am. Dec. 751; Herron v. W. U. Teleg. Co. 90 Iowa, 129, 57 N. W. 696.

The judgment is reversed, and the cause is remanded for a new trial.